PRO SE LITIGANT

AISAKE (ISAAC) P. NAUFAHU
339 NORTH CLAREMONT
SAN MATEO, CALIFORNIA 94401

TELEPHONE: 650-342-4817

# UNITED STATES DISTRICT COURT

## NORTHERN   DISTRICT   OF   CALIFORNIA

AISAKE (ISAAC) P. NAUFAHU

      Plaintiff,

v.

CITY OF SAN MATEO, Incorporated,
SAN MATEO CHIEF OF POLICE S. E. MANHEIMER,
SAN MATEO POLICE CAPTAIN M. CALLAGY,
SAN MATEO POLICE LIEUTENANT A. J. PARISIAN,
SAN MATEO POLICE AMENDING OFFICER JACK RADCLIFFE S26,
SAN MATEO POLICE OFFICER BOLOGNA BADGE NUMBER 95,
SAN MATEO POLICE OFFICER RICHARD REYNA,
SAN MATEO POLICE OFFICER MATTHEW LETHIN,
2 UNNAMED SAN MATEO POLICE OFFICERS

      Defendants

NO. CO7-04517 MMC

UNITED STATES FEDERAL JUDGE THE RIGHT HONORABLE MAXINE M. CHESNEY ON JAN 11, '08 GRANTED 2 RULINGS TO PLAINTIFF 45 DAYS UP TO FEB 29, '08 (1) SERVICE OF PROCESS TO POLICE DEFENDANTS EFFECTIVELY EXECUTED 4 FEB '08; and (2) AMEND COMPLAINT: HERE-IN, HEREUNDER

Plaintiff Aisake (Isaac) P. Naufahu, hereafter Isaac, is most grateful to The Right Honorable Judge Maxine M. Chesney Granting Rulings as abovestated, and now for Isaac's Amend Complaint.

## FACTS

Isaac is a law-abiding citizen. Yet, defendants City of San Mateo police officers named, and unnamed subjected Isaac to Racial Profilings, and by their Authority of their inherent Power as law officers inflicted hard, unjustified, unlawful, illegal treatments on Isaac because of ISAAC'S ETHNIC MINORITY RACE AS PERSON OF COLOR LEAST ABLE AND INCAPABLE TO DEFEND HIMSELF with the concomitant expectations of these named/unnamed defendants San Mateo police officers that because of Isaac's ethnic minority racial person of color, he should willingly, subserviently take the brutal abusive systematic animalistic

1

1  treatments defendants knowingly heaped onto Isaac, and for Isaac not to
2  object, to remain silent because racial persons of color are voiceless, to
3  be yieldingly pliable however which way defendants bend him because they have
   power over him his being a racial person of color, and not to ever speak out
4  for no one will hear him, or speak against defendants  because they have The
5  System on their side, and because of his lowly status being racial person
6  of color, defendants will always have The Upper Hand and whatever that
   defines, that denotes, and that connotes.

7  But, after Isaac was subjected by defendants named/unnamed San Mateo police
8  officers to 3 Incidents of Unlawful and Illegal Traffic Stops which constitute
9  Violations of Isaac's Rights  directly Under The Constitution of The United
   States, Shielded Under The Laws of The United States, Under Cover of Civil
10 Rights, and Under Protection of Traffic Laws, Rules, Regulations, Codes,
11 inclusive of defendants Inflictions of Inhuman, Inhumane, Racist Abuses
12 of/on Isaac because he is Racial Ethnic Minority person of color, Isaac
   decided ENOUGH, AND NO MORE.  Because with each Incident, Racial Ethnic
13 Minority person of color Isaac has fully complied Lawfully and Legally with
14 Traffic Laws, Rules, Regulations, Codes, supported by The Laws of The United
15 States, backed-up by Civil Rights, and Under-Shield-Of-Protection of and by
   The Constitution of The United States.

16 FIRST INCIDENT

17 The First (1st) Incident occured on the early morning of Monday, February 20,
18 2006, at about 3AM, or shortly thereafter.  Isaac was driving to work from
19 San Mateo where he lives to San Carlos where he works, at a job he has had
   exceeding eleven (11) years.  A white San Mateo police officer who turned
20 out to be defendant San Mateo police officer John Bologna badge number 95,
21 hereafter defendant Bologna, tailgated Isaac so dangerously closely that Isaac
22 feared defendant Bologna would surely severely smash into Isaac.

23 Defendant Bologna dangerously closely tailgated Isaac for 11 long blocks
   with fierce determined tenacity, all the way from 20th Avenue San Mateo to
24 31st Avenue Hillsdale, on El Camino Real, enjoying the evil thrill of HATE
25 CRIME of his knowing his being white he is subjecting victim racial ethnic
26 minority person of color Isaac to lowly inferior treatment abusively, and thus
   to fear and be terrified and unsettled of an imminent danger of police attack
27 if victim racial ethnic minority person of color Isaac made wrong move.

28                                                                          2

Isaac being familiar with Traffic Laws, Rules, Regulations, Codes, and has been driving since 1969, and drove from San Mateo to San Carlos to work for over 11 years, steadily maintain the required speed-limit for El Camino Real of 35 mph, compliantly maintained 30 - 35 mph, so it was understandably initially incomprehensible for Isaac as to why defendant Bologna would with fierce tenacity dangerously closely tailgate him.

It dawned on Isaac that because of his being Racial Ethnic Minority person of color, as such, his skin color triggers the Racial Profiling: Discriminatory Bigotry, Racial Prejudice, Ethnic Minority Bias, by defendant Bologna who would not have subjected him to such unjustified Inferiority abuse HATE CRIME were Isaac white.

Because defendant Bologna being white, and if Isaac was/is white, complying/ or even not complying with Traffic Regulation of 35 mph of El Camino Real, defendant Bologna would perceive such a white person his "Equal" and leave such white person his "Equal" well alone.

But, Not Here. Because defendant Bologna being white, looking at Racial Ethnic Minority person of color Isaac not his "Equal" subjected Isaac to "Unequal" condescendingly Inferiority abuse of INEQUALITY: BENEATH HIM IN HUMAN BAROMETRIC STATURE, BELOW HIM IN HUMAN RANKING OF HIM AS WHITE SUPERIORITY and whatever White Supremacy evokes in symbolism imagery, and Isaac: Racial Inferiority person of color: HATE CRIME and all that means and holds. And, tailgating such racial inferior person dangerously closely. So what? Even if such an Inferior racial minority person runs with The Law.

But! The answer consists the embodiment of The United States Constitution: We The People inclusive of all descriptions: We: citizens of The United States, fraom all walks of life, from birth to the grave, The United States Constitu-tion is Our Daily Shild of Protection, Our Very Fountain of Life, Here, There, Everywhere.

Not White Superiority. Not Non-Inclusive People of Color Racial Inferiority. That's Exactly what The Founding Fathers envisions. And out lungs are filled to capacity with that oxygen from The Founding Fathers daily: We The People: The Promise of Equality.    From The United States Constitution.

And, We The People are covered by The Laws of The United States, Our Personages, Our Identity of United States Citizenry, Our Backs are covered by The Laws of The United States. Bar None!

3

As such, over Isaac, a citizen of The United States, driving maintainingly 30 -35 mph on El Camino Real at 3AM or so, hovers steadily The United States Constitution.

And, moreover, covering Isaac's personage, covering Isaac's back are The Laws of The United States.

Also, Isaac's Back-Support because Isaac complying with Traffic Laws, Rules, Regulations, Codes, are those Laws, Rules, Regulations, Codes, and with their accompanying Statutes.

Therefore, defendant Bologna if he is familiar with The United States Constitution should have left Isaac well alone.

As well, if defendant Bologna is well-versed with The Laws of The United States should have left Isaac well alone.

Moreover, if defendant Bologna is thoroughlly knowledgable with Traffic Laws, Rules, Regulations, Codes, should have left Isaac well alone.

As such therefore, defendant Bologna had no right whatsoever Under The United States Constitution, and Under The Laws of The United States, and Under Civil Rights, and Under Traffic Laws, Rules, Regulations, Codes to fiercely tenaci-ously tailgate dangerously closely Isaac who was running with The United States Constitution on his side, with The Laws of The United States on his side, with Civil Rights on his side, with Traffic Laws, Rules, Regulations, Codes on his side.

And thus, what defendant Bologna should have done if he was efficient and competent, able and capable in his duty and job as law-officer has to back-off, but he did not.

After eleven (11) blocks of defendant Bologna dangerously determinedly tailgating Isaac tenaciously closely defendant Bologna told  Traffic Commiss-ioner The Honorable Stephanie Garrat on Friday September 15, 2006 that he pulled Isaac over.  Isaac signalled, then pulled over to the side of the road at 31st Avenue, Hillsdale, El Camino Real.

Defendant Bologna walked up with flashlight turned on full-blast, pointing it directly at Isaac's eyes, and face, front seats, floor, back seats, floor, and Isaac asked as to why the officer was dangerously closely tailgating him for 11 blocks.  Defendant Bologna did not answer.  Instead he accused Isaac of drinking and driving of which Isaac denied since he was on his way to work

4

1    to work at San Carlos.  EXHIBIT 1: Time Cards from Isaac's job at San Carlos.

2    Defendant Bologna called for police back-ups.  Two (2) defendants San Mateo

3    police officers, unnamed, hereafter defendant(s) arrived.  Both, 1 from driver

4    side, 1 from passenger side flashed their flashlights directly onto Isaac's

5    eyes, face, then onto the seats, both front and back, then  the floors, front and back.

6    Isaac was detained in his car for about forty (40) long minutes while the 3

7    defendants officers: Bologna, and 2 unnamed, talked at length in the back of defendant Bologna's car.

8    Isaac was handed by defendant Bologna Citation for Impede Traffic 22400(a) VC

9    EXHIBIT 2.  What Traffic is he talking about? At 3AM in that hour of the night

10    the only cars on El Camino Real that time of night of Monday February 20, 2006

11    were Isaac's car heading South on that side of the road, and defendant Bologna's

12    car heading North on that side of the road, before he made the sharp U-Turn at 20th Avenue and Harassed Isaac, tailgating Isaac so dangerously closely.

13    The Second (2nd) Citation was for No Insurance Policy: ABSOLUTE FALSEHOOD for

14    Isaac had already given to defendant Bologna proof of Auto Insruance Policy,

15    but he ignored it, did not even look at it, nor check the date of Insurance Policy.

16    In actuality, incidently, this was the very same Auto Insurance Policy that

17    Isaac showed to Judge who handled Auto Insurance Policy Section of Citation.

18    Sighting Proof of Auto Insurance Policy, the Judge DISMISS Auto Insurance Sec-

19    tion of the Citation.  Isaac Plead NOT GUILTY to Traffic Violation Section of the Citation which was heard at later Hearing before The Traffic Commissioner

20    The Honorable Stephanie Garrat on Friday, September 15, 2006.

21    Defendant Bologna knew that he had subjected Isaac to Unlawful Vehicular Stop,

22    and hence LIED DELIBERATELY WITH HIS FULL KNOWLEDGE HE HAD LIED ON THE CITA-

23    TIONS HE ISSUED TO ISAAC ON FEBRUARY 20, 2006.

24    Defendant Bologna had Stereotyped Isaac by his Racial Profiling, and as such to HATE CRIME, POLICE ABUSE, POLICE MISCONDUCT, RACIAL VITUPERATIVE INSULTS,

25    MENTAL ABUSE, PSYCHOLOGICAL ABUSE.

26    His Citations indicated No Traffic from 20th Avenue to 24th Avenue.  As to his

27    making the sharp U-Turn at 20th Avenue and tenaciously tailgate Isaac, is answered only by HATE CRIME FOR RACIALLY COLOR PERSON OF ISAAC, because

28

5

1   he was initially heading North, and would have continued heading North, if
2   upon seeing Isaac on the other side of the road, and were Isaac white, he
    would have left Isaac alone, but this he did not.
3
    And, at 25th Avenue, he made a Right Turn heading West, away out of the area
4   from El Camino Real.

5   As Isaac drove through 25th Avenue, he saw to his right, there was defendant
6   Bologna's back of his police car, thereby out of the area.

7   Isaac continued driving on the Right-hand lane. At that time of the night,
    Isaac's car was the only single solidary vehicle on El Camino Real heading
8   South, none on the other side heading North.

9
    All of a sudden defendant Bologna drove up from whereever he was on the West
10  side, and returning to El Camino, continued with his determined tenacity
11  to dangerously closely tailgate Isaac.

12  Defendant Bologna's Citation indicated Isaac Impede Traffic S El Camino
    Real @ 25th Avenue.
13
    But, there was ABSOLUTELY NO TRAFFIC WHATSOEVER TO IMPEDE.  THE ONLY VEHICLE
14  ON S EL CAMINO REAL @ 25TH AVENUE WAS ISAAC'S.

15
    Defendant Bologna had already exited from 25th El Camino Real having Right-
16  turned, away from S El Camino Real @ 25th Avenue, out of sight!

17  As such, DEFINITELY NO TRAFFIC.  AT THAT TIME OF THE NIGHT!

18  As such, Defendant Bologna LIED ON THE CITATION HE ISSUED TO ISAAC.  Defendant
19  Bologna WAS NOT EVEN ON S EL CAMINO REAL @ 25TH AVENUE AS HE SHOWS ON HIS
    CITATION ISSUED TO ISAAC, he was AWAY AT/ON THE WEST SIDE OF 25TH AVENUE, AFTER
20  HE HAD ALREADY MADE HIS RIGHT-TURN AND EXITED FROM 25TH AVENUE.

21
    Defendant Bologna ALSO LIED UNDER OATH BEFORE THE TRAFFIC COMMISSIONER OF THE
22  SUPERIOR COURT OF THE STATE OF CALIFORNIA THE HONORABLE STEPHANIE GARRAT when
23  asked as to traffic, and defendant Bologna spoke of the HEAVY-DUTY TRAFFIC, AND
    WHEN ASKED AS TO THAT HOUR OF THE NIGHT AT 3AM, AND DEFENDANT BOLOGNA CONTINUED
24  ON WITH HIS LIES.

25  The Honorable Garrat looked at defendant Bologna in sort of funny way, and
26  removing his glasses when defendant Bologna spoke of Heavy-Duty Traffic at
27  3AM on El Camino Real heading South at 25th Avenue to Hillsdale Mall, CLOSED
    AT THAT HOUR OF THE NIGHT!

28                                                                              6

1
2
3

It's a different story if it's 3PM during the day in the afternoon.  Every-
one knows of Traffic at 3PM at daytime in the afternoon, vehicles here, there,
everywhere, people rushing to and fro, shoppers scurrying to this and that,
shopping busily at Hillsdale Mall.  BUSY HEAVY TRAFFIC AT 3PM, AT DAYTIME!

4
5
6

Just as everyone knows NO TRAFFIC AT 3AM AT NIGHT.  NO TRAFFIC.  PERIOD!
All those that drive on S El Camino Real at 3AM, or 4AM, or 5AM knows that
there's NO TRAFFIC.

7
8
9

Isaac has worked at San Carlos for many years for his shift early  SHIFT  at
4AM  Nighttime to early afternoon the next day.  He is used to driving to
work at El Camino Real, there is ABSOLUTELY NO TRAFFIC WHATSOEVER there at
that hour in the time of the night.

10
11

Defendant Bologna implied No Traffic from 20th Avenue to 24th Avenue, BUT
SUDDENLY HEAVY-DUTY TRAFFIC ON S EL CAMINO REAL @ 25TH AVENUE.  DEFENDANT
BOLOGNA HAD COMMITTED PERJURY.

12
13

WHY ONLY AT THAT TIME OF NIGHT THERE WAS HEAVY-DUTY TRAFFIC AT S EL CAMINO
REAL @ 25TH AVENUE?

14
15
16
17
18
19

The persisting remaining unanswered questions are multifold: in defendant
Bologna's Original Citation as to Impede Traffic S El Camino Real @ 25th
Avenue, but he was not there at that time.  He was elsewhere which prompts
Isaac to ask at Trial of The Right Honorable Zimmerman to please select
any Taxi of the Court's choice, and for the Judge to please get into that Taxi
and the taxi-driver drive off, and then let defendant Bologna tell one and all
as to location of that taxi at what street in San Francisco, and at what
speed  the vehicle is being driven at.

20
21
22
23

Because defendant Bologna implies by his Original Citation that he has the one-
of-a-kind rare, unique to his exclusivity capability, ability, and capacity to
tell speed of vehicles, and location, and Traffic situation anywhere and
elsewhere even though he is not there.

24
25
26
27

For this super-spectacular event, may The Right Honorable Court please invite
the Media for full-coverage so that we could all marvel and wonder in breath-
taking awesome super-wonder miracle at/of defendant Bologna's unique talent to
his exclusivity of being elsewhere yet having capacity-capability-ability and
mental envision ability to tell speed of vehicles and Traffic situation
anywhere, anytime!

7

28

1 Also, let defendant Bologna tell the Judge   at Trial as to how many vehicles
2 Isaac supposedly Impede their vehicular course and journey on S El Camino
3 Real @ 25th Avenue.

4 As well, defendant Bologna need to tell the Judge at Trial as to how fast
those vehicles were travelling.

5 Moreover, defendant Bologna need to tell the Judge at Trial as to how many
6 vehicles were in the 2 Inside Lanes of El Camino Real since Isaac's vehicle
7 was the only single, solidary vehicle travelling at 3rd lane at 3AM at that
time of night.

8 Also, defendant Bologna need to tell the Judge as to how fast those vehicles
9 in those 2 Inside Lanes were travelling.

10 As well, defendant Bologna need to explain in full clarity as to why when he
11 started Harassing Isaac at 20th Avenue to 24th Avenue: NO TRAFFIC, then all of
12 a sudden IMMEDIATE HEAVY-DUTY TRAFFIC AT S EL CAMINO REAL @ 25TH AVENUE.

13 At that time of night, he had already driven off elsewhere having exited at
14 S El Camino Real @ 25th Avenue heading West, then suddenly him reemerging to
El Camino Real and NO TRAFFIC.

15 WHERE DID ALL THOSE SUPPOSEDLY HEAVY-DUTY TRAFFIC DISAPPEAR TO?

16 LIKE THAT ZOMBIE ZONE IN FLORIDA WHERE HUMANS, BOATS, PLANES MYSTERIOUSLY
17 DISAPPEAR TO!

18 And also, defendant Bologna need to explain to the Judge at Trial as to how
19 fast Isaac was driving all the way up to 31st Avenue at Hillsdale Mall when he
pulled Isaac over, and the Hillsdale Mall was CLOSED BEING NIGHT-TIME AT 3AM,
20 or so that time of night!

21 Obviously The Honorable Traffic Commissioner The Honorable Stephanie Garrat
22 saw all these, and knew that defendant Bologna was LYING ON THE CITATIONS HE
23 ISSUED TO ISAAC, AND ALSO LIED IN COURT AFTER BEING SWORN-IN.

24 MAY THE RIGHT HONORABLE JUDGE AT TRIAL BE PREPARED FOR DEFENDANT BOLOGNA, AND
HIS LIES AND EXPLANATIONS.

25 HE WILL NEED TO EXPLAIN THE TRAFFIC SITUATION.

26 WHAT WILL HAPPEN AT TRIAL IS THAT ISAAC WILL BRING A BLACKBOARD AND DRAW
27 DIAGRAM(S) INDICATING WHERE HE WAS, AND AT 3AM AT THAT TIME OF NIGHT: NO TRAFFIC
28 WHATSOEVER.

8

1  AT 3AM, ZERO TRAFFIC, NIGHTTIME!

2  NO HEAVY-DUTY TRAFFIC BUMPER-TO-BUMPER VARIETY LIKE DEFENDANT BOLOGNA INSISTS.

3  THEREFORE, EVERYBODY KNOWS INCLUDING THE HONORABLE TRAFFIC COMMISSIONER THE
4  HONORABLE STEPHANIE GARRAT THAT ISAAC DID NOT VIOLATE ANY LAWS.

5  BUT, DEFENDANT BOLOGNA AND HIS 2 BACK-UP UNNAMED OFFICERS DEFENDANTS DID:
   FALSE CITATIONS, ILLEGAL DETENTION, AND FALSE IMPRISONMENT.

6  
7  Just as a criminal having committed a crime, then covered his trail, here,
   defendant Bologna after his committing Crime of Perjury, he makes up stories,
8  just as President Clinton spoke of "The Biggest Fairytale..."

9  Hence, Punitive Damages are more than necessarily applicable to STOP OFFICERS
   OF THE LAW FROM MANIPULATIVELY MANUFACTURING LIES AND FALSEHOODS WHILE ON DUTY
10 UNBECOMING OF THE BADGE THEY WEAR BECAUSE WHILE THEY ARE WITHIN THE SCOPE OF
11 THEIR EMPLOYMENT, THEY ARE NOT ONLY LIABLE THEREFOR; BUT, ALSO THEIR EMPLOYERS
12 THEREFORE.   HERE, THE SAN MATEO POLICE DEPARTMENT, AND THE CITY OF SAN MATEO,
   HOLDING IT VICARIOUSLY LIABLE THERETOFORE.
13
   The City of San Mateo is Agency, Employer of The San Mateo police officers.
14
15 Isaac's eldest daughter Loselea at the time Senior at Notre Dame de Namur
   University, Belmont, California (2007 Commencement Valedictorial Speaker at
16 that University), and Isaac went to the San Mateo Police Department to lodge
17 a Complaint in the afternoon of 2/20/2006 with regards to defendant Bologna's
   LIES AND FALSEHOODS CITATIONS AGAINST ISAAC.
18
   About 2 days later, Isaac received in the mail Notice of Correction indicating
19 that the Original Citation issued to Isaac by defendant Bologna on 2/20/2006
20 was Amended/Changed from 22400(a)VC to 22109 VC Failing to Signal.   EXHIBIT 2.
   They came up with a LIE TO HIDE A LIE, AS ISAAC TOLD THE HONORABLE TRAFFIC
21 COMMISSIONER THE HONORABLE STEPHANIE GARRAT ON FRIDAY SEPTEMBER 15, 2006.
22
   When The Traffic Commissioner The Honorable Garrat saw that the Original Cita-
23 tion of 2/20/2006 by defendant Bologna was Amended-Changed by San Mateo police
24 officer Jack Ratcliffe S26, hereafter defendant Ratcliffe, The Honorable Garrat
   knew right away that just as defendant Bologna had LIED, so likewise this
25 new officer defendant Ratcliffe had also LIED.   It is known that Judges made/
26 make their decisions based on EVIDENCE BEFORE THE COURT IN FRONT OF THEM, NOT
27 FAIRYTALES PEOPLE BRING TO COURT, LIKE FAIRYTALES DEFENDANT BOLOGNA BROUGHT TO
28 COURT.

1  THE POLICE COVER-UP has begun in earnest, and In-Progress.  Also Perjury,
2  Conspiracy, Accomplice, Malicious Silence, Obstruction of Justice, and
3  Violation of Due Process.

4  And, defendant Ratcliffe was not in the Scene to eyeball the Incident if there
   was indeed any such as he asserted Failing to Signal.  But where?
5  And when?

6  Furthermore, defendant Ratcliffe actively knowingly COVER-UP LIES AND FALSEHOOD
7  by his fellow-officer defendant Bologna, both having signed with the declara-
   tion under peanlty of perjury under laws of the State of California the fore-
8  going is true and correct.  Both have heinously committed Perjury, Accomplice,
9  Conspiracy, Malicious Silence, Obstruction of Justice.

10  In early August 2006, Isaac received letter from San Mateo Police Captain Mike
11  Callagy EXHIBIT 3, hereafter defendant Callagy, which informed Isaac that his
    Complaint to Police Department as already described, was investigated by San
12  Mateo Police Lieutenant Alan J. Parisian, hereafter defendant Parisian, and
13  he exonerated his fellow-officer defendant Bologna.

14  Defendant Parisian had interviewed Isaac.  He vehemently denied any involvement
15  of defendant Bologna with the Incident of the Unlawful Traffic Stop of the
    night of Monday, February 20, 2006 at about 3AM, or so.  Defendant Parisian
16  even suggested (ANOTHER FAIRYTALE) that 2 different police cars tailgated
17  Isaac.  But, Isaac stayed on the path of being right and insisted that it was
18  defendant Bologna who tailgated him, and it was the very same defendant Bologna
    who signed the Original Citation on 2/20/06.  At this, defendant Parisian got
19  so viciously angry, very mad, pissed-off, and immediately Cut-Off the Interview.

20  THAT TAPED INTERVIEW MUST BE BROUGHT TO TRIAL WHEN THIS CASE GOES TO TRIAL
21  BEFORE THE RIGHT HONORABLE ZIMMERMAN.  IT IS WITHIN THE INHERENT POWER AND AU-
    THORITY OF THIS RIGHT HONORABLE COURT TO COURT-ORDER THAT TAPED INTERVIEW FOR
22  ITS PRESENCE IS A LEGAL NECESSITY IN COURT AT TRIAL.
23
    In Court, on Friday, September 15, 2006, Isaac's attorney Mitri Hanania asked
24  defendant Bologna as to whether he was the officer that made sharp U-Turn at
25  20th Avenue originally heading North, and now heading South.  Defendant Bologna
    admitted he was.  Attorney Hanania asked defendant Bologna as to whether he was
26  the officer that tailgated Isaac, and to which defendant Bologna admitted
27  again that he was.  He also admitted under Oath that he came up from behind
28  Isaac and followed Isaac all the way up to 25th Avenue, where he turned Right.

Attorney Hanania asked defendant Bologna as to whether he was the officer that issued Citation to his client Isaac for Impeding Traffic, and to which defendant Bologna again admitted he was, as he spoke of the Heavy-Duty Traffic.

The ripples throughout the Courtroom of gurgling giggles in the Courtroom was telling because all present knows instinctively that defendant Bologna has LIED AND THUS HAD COMMITTED PERJURY UNDER OATH IN THE COURTROOM OF LAW.

Just as defendant Bologna COMMITTED PERJURY ON PAPER WHERE HE LIED AND TOLD FALSEHOODS ON PAPER, NOW IN THE COURTROOM OF LAW HE IS VERBALLY UTTERING MORE LIES AND THUS COMMITTING MORE PERJURY.

In defendant Callagy's letter bearing the insignia inclusive of easily recog- nizable identifiable symbol and Letters "CITY OF SAN MATEO", directly impli- cates defendant City of San Mateo because said City is Employer, Agency, and Vicarious Liability of its Employees while they are under Employment such as the defendants in this case: named and unnamed San Mateo police officers.

Defendant Callagy in his letter informed Isaac that defendant Parisian's exoneration of his fellow-officer defendant Bologna was Approved of by San Mateo Chief of Police Susan E. Manheimer, hereafter defendant Manheimer.

This constitutes COVER-UP.   CONSPIRACY.   ACCOMPLICES.   MALICIOUS SILENCE. VIOLATION OF DUE PROCESS.

And, the COVER-UP.  MALICIOUS SILENCE.  OBSTRUCTION OF JUSTICE OF/BY DEFENDANT CITY OF SAN MATEO: EMPLOYER, AGENCY, VICARIOUS LIABILITY AS TO DEFENDANTS HERE OF THE SAN MATEO POLICE OFFICERS, NAMED AND UNNAMED.

Cover-Up actions of superiors (defendant  Ratcliffe, defendant Parisian, defendant Manheimer, defendant City of San Mateo) are sufficient to State Cause of Action against the Municipality, as here defendant City of San Mateo, would have to meet the standards set forth in municipal liability  in Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611.

Here, such standards for municipal liability are satisfied and fulfilled.

This is true where the COVER-UP amounted to a Ratification of the officer's unlawful and illegal conduct: to wit: defendant Bologna's unlawful and illegal conduct approved of by defendant Manheimer, informed of by defendant Callagy, where defendant Bologna's unlawful and illegal conduct/activities were exone- rated by defendant Parisian, and, because of Liable Implication directly of the Municipality, as here City of San Mateo who is The Employer, Agency,

11

Vicarious Liability, hence direct consequential Liability of defendant City of San Mateo.

To The Traffic Commissioner, The Honorable Stephanie Garrat, Superior Court, State of California, Central Branch, County of San Mateo, Isaac sent to him Priority Mail on Saturday September 16, 2006 EXHIBIT 4 the Original Citation by defendant Bologna, and the Amended Citation by defendant Ratcliffe, EXHIBIT 2, heretofore stated.

Receiving Priority Mail from Isaac, heretofore described, on Monday September 18, 2006, obviously The Honorable Garrat saw the Lies and Falsehoods tortiously committed by defendants Bologna and Ratcliffe glaringly evidentiary of Gross Disrespect for the Court by defendants police officers, not just the Lies and Falsehoods on paper in their Citations; but, also, the Lies and Falsehoods uttered unmistakably by defendant Bologna to The Honorable Court while he was in Court facing The Honorable Garrat after having being Sworn-In.  Obviously defendant Bologna no longer has the ability, nor capacity, nor capability to differentiate between Lies and Truth.

But, The Honorable Garrat did differentiate between Lies and Falsehoods from defendants Bologna and Ratcliffe from the San Mateo Police; and the Truth from Isaac. Truth has its own volition and power, it surfaces, and cannot be ever suppressed.   Truth has a voice of its own, and will speak, and make its own declaration.

Usually, Courts take a while to make Court decisions.  Not here.  The Honorable Garrat move super-fast.  Judges do not like people inclusing police officers who  come into Their Courtrooms: Their Spheres and Domains of Justice They Judiciously Guard for the sake of Justice and Their Own Legacy and will be quoted in Law Books, The Court knew evidentiary The Court was Lied to by law officers who showed The Court unforgivable, intolerable, unendurable  Gross Huge Disrespect.  The Court decided ENOUGH AND NO MORE.

The Honorable Garrat called Isaac's Attorney Hanania and to let him know to alert his client Isaac that the Court DISMISS the San Mateo Police Case(s) against Isaac.

AND UNMISTAKABLY, IRREFUTABLY, UNDENIABLY, The State of California Superior Court Traffic Commissioner The Honorable Garrat obviously by His Honor's DISMISS of defendants San Mateo Police Case(s) against Isaac did not exonerate defendant Bologna as defendant Parisian did; nor the Approval for the exoneration by defendant Manheimer, nor the endorsement-enforcement-ratification by

1   Employer-Agency-Vicarious Liability of defendant City of San Mateo.

2   In December 2006, Isaac submitted to defendant City of San Mateo Claim for
    Damages.
3

4   In February 2007, Isaac received from defendant City of San Mateo Its  City
    Attorney Shawn M. Mason letter EXHIBIT 5 which is self-explanatory as to Its
5   rejection of said defendant City of San Mateo  Claim for Damages submitted to
6   It by Isaac.

7   But, however, determining definitively, and putting everything through The
    Scope of Justice, through The Lens of The Laws of The United States, in their
8   proper perspective, to the degree that evidence can be adduced that the COVER-
9   UPS, as described; the Malicious Silence, as described; the Perjury, as des-
10  cribed; the Conspiracy, as described; the the Accomplices, as described; the
    Illegal Detention: Violation of 4th Amendment Rights of The United States
11  Constitution, as described; the Amendment of Citation was tortious criminal
12  activity constituting Violation of Isaac's Due Process, as described; the False
    Imprisonment, as described; the Obstruction of Justice, as described; the
13  Racial Vituperative Insults, as described; all of identifiable named defendants
14  as described; and the glaring failure imputable to defendant City of San Mateo:
15  Employer-Agency-Vicarious Liability at/as The Head of Chain of Command, to have
16  taken none of the prerequisite necessary corrective action, and turning inten-
    tionally away from such required prerequisite necessary corrective action, Its
17  necessary duty and responsibility to so do of the repeated errant employees
18  defendants police officers then are-become inherent part-and-parcel- bone-
19  and-hide-and-skin and mindset of a municipal's policy, or custom, which there-
    fore appropriately directly conquentially introduces Second (2nd) Incident
20  of Isaac's Claims directly theretofore EXHIBIT 6.which primarily constitutes
21  HARASSMENT, RACIAL VITUPERATIVE INSULTS, PSYCHOLOGICAL ABUSE, MENTAL ABUSE,
22  AND SUBSEQUENT EMOTIONAL DISTRESS.

23  A call was placed to Chief of Police Susan E. Manheimer, but who never call
    back nor respond in any way, shape, or form.  This constitutes COVER-UP,
24  MALICIOUS SILENCE.  CONSPIRACY.  ENDORSEMENT-ENFORCEMENT-RATIFICATION OF
    HER OFFICERS' UNLAWFUL AND ILLEGAL ACTIVITIES.
25  SECOND INCIDENT

26  Evokes United States Code, Title 42, Section 1983: 42 U.S.C. Sec 1983.  Civil
27  Action for Deprivation of Rights.  Harassment is a common form of Police Mis-
    conduct, and Police Abuse.
28                                                                              13

HARASSMENT OF INDIVIDUALS BASED ON THEIR RACE, ETHNIC BACKGROUND VIOLATES RIGHTS GUARANTEED UNDER THE 1ST, 4TH, AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION.  Harper v. Harris County, Texas, 21F. 3d. 597 (5th Circ. 1994) (en banc) EQUAL PROTECTION CLAIM FOR VITUPERATIVE RACIAL INSULT.

Isaac was driving to work  Thursday night of July 12, 2007.  Defendants 2 San Mateo police officers Richard Reyna, hereafter defendant Reyna, and Matthew Lethin, hereafter defendant Lethin, HARASSED ISAAC.

Defendant Reyna/defendant Lethin actual identity known of either by person of head shaved, white officer, at around 3:10AM at night, followed Isaac on Delaware Street in San Mateo for 4 blocks, and pulled Isaac over at the corner of 2nd Avenue on Delaware Street.  Isaac has been driving steadily maintaining 25mph, the requisite speed limit for that section of town of San Mateo.

Isaac drove with the Law in full compliance with Traffic Laws, Rules, Regula-tions, Codes.  Defendant Reyna/defendant Lethin asked Isaac for his Driver's License which Isaac gave to him, and he went back to his police car to check Isaac on Police Computer Database.  And, there is a Record of this whenever a Driver's License is being checked by a police officer.

After 4 or so minutes went by, defendant Reyna/defendant Lethin handed Isaac his Driver's License.  No Citation was issued, because Isaac's Driver's License was in good standing, not suspended, and no warrant for any arrest.

Because Isaac was in full compliance with Traffic Laws, Rules, Regulations, Codes, the Traffic Stop by defendant Reyna/defendant Lethin was therefore Unlawful and Illegal.

THIS CONSTITUTES HARASSMENT BECAUSE THE TRAFFIC STOP WAS BASED ON ISAAC'S RACE, HIS ETHNIC MINORITY BACKGROUND THEREFORE VIOLATING ISAAC'S RIGHTS GUARANTEED UNDER THE 1ST, 4TH, AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION.  Harper, as abovestated.  VITUPERATIVE RACIAL INSULT.

Isaac continued on, made a brief stop to put gas in his car, then to Safeway for some groceries.

As Isaac drove through 25th Avenue, on El Camino Real in San Mateo, he noticed a police car following Isaac.

For Isaac, there was momentarily the immediate flash-back of the First Incident of that San Mateo police officer defendant Bologna tailgating him.

Now here, there was this yet again this Incident of another yet another police

14

1    car following him.

2    As Isaac drove through 37th Avenue, 12 blocks later, it is now the Hillsdale
3    area, the car closely following and tailgating Isaac was a San Mateo police
     car.
4
5    The 2nd San Mateo police officer, defendant Reyna/defendant Lethin pulled
     Isaac over to the side of the road at 1 block South 37th Avenue, i.e., 38th
6    Avenue, El Camino Real, the time around 3:40AM, still in the nighttime.

7    The 2nd officer defendant Reyna/defendant Lethin walked up to Isaac with his
8    flashlight on full-blast, and questioned Isaac in a very loud and angry voice,
     "Did my partner pull you over?".
9
10   Isaac responded, "Yes, a San Mateo police officer pulled me over first in San
     Mateo, and now for the second time about 30 minutes later here in Hillsdale."

11   These 2 different San Mateo police officers, defendants Reyna, and Lethin, are
12   both white.  It is obvious to anyone with any thinking capacity that the 1st
13   officer called his partner the 2nd officer to look out for Isaac describing his
     vehicle, race, ethnicity, minority, and who pulled Isaac over, and there
14   should be a record of this both of the first pull-over, and the second pull-
15   over; yet what is suspicious to anyone with any thinking capability and
16   reasoning ability there was no necessity for the second pull-over because
     Isaac's Driver's License has been checked by the 1st officer, and his Driver's
17   License is in good standing, and not suspended, and no warrant for his
18   arrest.

19   In a way, this constitutes ONSET OF EMOTIONAL DISTRESS.to victim Isaac who is
     powerless, voiceless, defenseless, and THE OFFICERS KNOW THESE.
20   Both Unlawful and Illegal Traffic Stops constituting Harassment: based on
21   Isaac's Race, and Ethnic Background.

22   In a sense, palpable, the officers have taken away, wrenched away from Isaac
     his FREEDOM ALLOWED BY THE LAWS OF THE UNITED STATES, HIS RIGHTS ALLOWED BY
23   THE CONSTITUTION OF THE UNITED STATES, HIS CIVIL RIGHTS TO DRIVE ON THE ROAD
24   SINCE HE HAS A GOOD DRIVER'S LICENSE, AND AUTO INSURANCE POLICY WITH HIM.

25   The 2nd San Mateo police officer defendant Reyna/defendant Lethin loudly excla-
     matorily spouted off and vehemently exploded in violent outbursts stuff
26   incomprehensible to Isaac.

27   THIS CONSTITUTES RACIAL VITUPERATIVE INSULTS.  MENTAL ABUSE.  PSYCHOLOGICAL
28   ABUSE.  MORE HARASSMENTS.

                                                                              15

To these San Mateo police officers, Isaac because of his Race, and Ethnic Background is worthless, and valueless, write him off, not of our concern.

NOT SUPPORTED BY WE THE PEOPLE OF THE CONSTITUTION OF THE UNITED STATES, NOR THE LAWS OF THE UNITED STATES, NOR CIVIL RIGHTS.

THIRD INCIDENT

The 3rd Incident occured where San Mateo police officer Michael Closs robbed Racial Ethnic Minority Isaac of $50 on January 22, 2000.

Isaac filed Complaint with San Mateo Police Department, probably at the time of Police Chief John Stengl, Police Phipps who got along with Racial Ethnic Minorities, has left the Department, and the City of San Mateo, his Employer.

Isaac filed Complaint with San Mateo Police Department and expected an answer, provided by defendant City of San Mateo, Its Mayor at the time Jan Epstein who denied any liability of the officer and that it never happened. The Response to that was that Jews were never masaccred by Adolph Hitler, and the African Americans were never slaves in this country, and the Native Americans never suffered when their lands were wrenched away from them. There was No Response to that Response.    RACE. ETHNIC BACKGROUND, VITUPERATIVE RACIAL INSULTS ARE RAMPANT.

The Response from Mayor Epstein constitutes COVER-UP from The Head of Chain of Command all the way from Top on down to deny any liability and Accountability of what others down the Chain of Command are scurrying to and fro doing, Actioning Unlawfully and Illegally, just close your eyes, just turn the head away and protect your own. These people of color, not your own. Their Race, not your own, Their Ethnic Background, not your own!

With the First (1st) Incident, heretofore described, Isaac wrote defendant City of San Mateo Its Mayor John Lee who never responded.  Isaac is Not His Own: Not of His Race, Not of His Ethnic Background.  This constitutes COVER-UP, CONSPIRACY. ACCOMPLICES. MALICIOUS SILENCE. HARASSMENT. PSYCHOLOGICAL ABUSE.  MENTAL ABUSE.  OBSTRUCTION OF JUSTICE CONTINUING UNABATED.

Defendant City of San Mateo employee defendant Manheimer in Brochure for defendant City of San Mateo declares in Philosophy of Chief of Police EXHIBIT 7 that "The San Mateo Police Department is dedicated to providing the highest level of police services to all persons within our community..."

Yet, this very defendant Manheimer COVER-UP, CONSPIRACY, ACCOMPLICE, MALICIOUS SILENCE, OBSTRUCTION OF JUSTICE roll-on in progress, unstopped, unabated.

16

1

## LEGAL ISSUES WITH APPLICABLE LAWS CITED

2

VIOLATION OF UNITED STATES CONSTITUTIONAL RIGHT: 4TH AMENDMENT SEIZURE

3

ILLEGAL DETENTION

4

Under Rule of Law, police officer may detain and question a person upon

5

officer's reasonable belief that criminal activity is afoot.

6

Test to apply:

7

1.  Person detained?  Here, yes.  Defendant Bologna detained Isaac.  And
    thus, Isaac was detained.

8

9

2.  Reasonable person free to leave?  Here, No.  Isaac was not free to leave.
    Defendant Bologna and his 2 back-up unnamed officers, by their very

10

    Presence, were there to Detain Isaac.  And, thus, Isaac was not free to

11

    leave.

12

3.  Did officer have objective belief basis to believe person engaged or about

13

    to engage in criminal activity?  Here, No. Defendant Bologna tailgated
    Isaac for eleven (11) blocks even though Isaac was steadily complying

14

    with Traffic Laws, Rules, Regulations, Codes.  Defendant Bologna was

15

    himself engaged in criminal activity of Racial Profiling because of
    Isaac's visibility of his Race, of Ethnic Minority person of color, and

16

    his skin color triggered in defendant Bologna his Racial Profiling of

17

    Isaac to exercise HATE CRIME OF AND TO ISAAC, his clear Racism of Isaac,
    Color-Bar and Bias against Isaac, Prejudice and Bigotry concerning the

18

    way, and methodology of his Discrimination against Isaac by his dangerously

19

    :closely tailgating Isaac.  Accordingly officer Bologna did not have

20

    objective basis to believe Isaac was engaging in criminal activity.
    And moreover, he ended up LYING IN THE ORIGINAL CITATION ON FEBRUARY 20,

21

    2006, WHICH CLEARLY SHOWS THAT DEFENDANT BOLOGNA WAS DETERMINED TO GIVE

22

    ISAAC CITATIONS EVEN THOUGH FALSELY.  NO ONE CAN DO WORSE THAN THAT.  AND

23

    THANK BE TO THE SYSTEM THAT AN HONEST JUDGE SUCH AS TRAFFIC COMMISSIONER
    THE HONORABLE STEPHANIE GARRAT SAW THE LIES AND FALSEHOODS BY DEFENDANT

24

    BOLOGNA, AND THIS SPEAKS VOLUMES ABOUT HONEST AND JUDICIOUS JUDGES IN THAT

25

    THEY DO EXIST AS DEFENDERS OF JUSTICE!

26

4.  Was the stop temporary?  Here, No.  It was not.  It extended in excess

27

17

28

1  of going 40 minutes, long, unendurable, intolerable, unnecessary  minutes,

2  while defendant Bologna fished for what to falsely cite Isaac with.  His 2

3  back-up unnamed defendants officers engage in Conspiracy and Accomplices

   (hereunder) what to fraudulently cite Isaac for, dishonestly with No Integrity

4  to Cite Isaac with.  As such, therefore, the stop was not temporary.

5  5.  Was stop no longer than necessary?  Here, No.  It most certainly, defini-

6  tively was not.  It way exceeded unreasonable time of time-scope, time-

   spectrum, time-frame, time-duration. Thus, the stop was longer than necessary.

7  And  so, in totality, in its entirety, defendant Bologna and his 2 back-up

8  defendants officers VIOLATED ISAAC'S 4TH AMENDMENT UNITED STATES CONSTITUTION-

9  AL RIGHT AS TO ILLEGAL DETENTION.  THEY ARE LIABLE THEREFOR.

10  HARASSMENT: 1ST COUNT INCLUSIVE OF RACIAL VITUPERATIVE INSULTS, 1ST COUNT,

11  VIOLATIONS OF 1ST, 4TH, AND 14TH AMENDMENTS OF THE UNITES STATES CONSTITUTION.

12  Under The United States Code, Title 42, Section 1983: 42 U.S. Sec 1983.

   Civil Action for Deprivation of Rights.  Harassment is a common form of Police

13  Misconduct, and Police Abuse.

14  Under this United States Code, HARASSMENT OF INDIVIDUALS BASED ON THEIR RACE,

15  ETHNIC BACKGROUND VIOLATES RIGHTS GUARANTEED UNDER THE 1ST, 4TH, AND 14TH

16  AMENDMENTS OF THE UNITED STATES CONSTITUTION.  Harper v. Harris County, Texas,

   21F. 3d. 597 (5th Circ. 1994) (en banc) Equal Protection Claim for Vituperative

17  Racial Insult BASED ON RACE, AND ETHNIC BACKGROUND.

18  Here, defendant Bologna subjecting Isaac to fiercely dangerously tailgating

19  Isaac because of Isaac's Race, and his Ethnic Background Minority person of

20  color least able and no-capability, no-capacity to defend himself, and Isaac's
    Ethnic Background of Ethnic Minority person of color by defendant Bologna's

21  Racial Profiling of Isaac,   thus subjugating Isaac to lowly Inferiority abuse

22  of dangerously tailgating Isaac even when Isaac was fully complying with Tra-

23  ffic Laws, Rules, Regulations, Codes, constitute HARASSMENT, AND RACIAL
    VITUPERATIVE INSULTS BECAUSE OF DEFENDANT BOLOGNA'S ASSESSMENT OF HIS BEING

24  WHITE HENCE WHITE-SUPREMACY AND ISAAC NON-WHITE THUS NON-EQUALITY, AND THEREFORE

25  TO SUBJECT SUCH LOWLY INFERIOR MINORITY PERSON OF COLOR TO ANIMALISTIC ABUSE,

26  HIS REASONING BEING PEOPLE OF COLOR UP TO NO-GOOD, SO WRITE THEM OFF, AND US
    WHITES ON THE OTHER SIDE DOING GOOD, SO WE ARE IN THE RIGHT, BUT UNJUSTIFIABLE

27  UNDER THE LAWS OF THE UNITED STATES, BACKED UP BY CIVIL RIGHTS, AND SUPPORTED

28  BY THE CONSTITUTION OF THE UNITED STATES.                                    18

**1** Therefore, defendant Bologna is Liable for Harassment and Vituperative Racial
**2** Insults therefore Violating Isaac's Rights Guaranteed Under the 1ST, 4TH, AND
**3** 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

**4** PERJURY 1ST COUNT

**5** Under The Rule of Law, the criminal offense of making false statement under
**6** oath in a legal proceeding with no sincere belief in its truth, when it is rele-
vant to a material in the proceeding.

**7** Here, defendant Bologna made the criminal offense of false statement under
**8** oath in Original Citation he issued to Isaac because before signing his name,
**9** there is the declaration "I swear under penalty of perjury that the foregoing
is true and correct", that Isaac Impede Traffic at S El Camino Real @ 25th
**10** Avenue  because at that point in time and location he'd already made Right turn
**11** at 25th Avenue, and had exited, away from the area, so how is it lawfully
**12** and logically possible for him being already out of the area and location to
know, to see, to perceive what is going on in that very precise area as he was
**13** facing away from S El Camino Real and Isaac's car at that precise time and
**14** location the only single, solidary vehicle on S El Camino Real @ 25th Avenue
**15** AND THERE WAS ABSOLUTELY NO TRAFFIC WHATSOEVER TO BE IMPEDED AND OF WHICH HE
INSISTED in the legal proceeding before The State of California Traffic
**16** Commissioner The Honorable Garrat, and defendant Bologna lacked the sincere
**17** belief in its truth in/of his Citation he'd issued to Isaac, because it was
**18** relevant to the Citation he'd issued Falsely to Isaac in the proceeding.

**19** And thus, defendant Bologna had/has committed PERJURY.

**20** PERJURY  2ND COUNT

**21** Rule of Law heretofore cited above.

**22** Here, defendant Ratcliffe made the criminal offense of false statement under
**23** oath in his Amended Citation he issued to Isaac on 2/21/06 because before
**24** signing his name, there was the declaration "I swear under penalty of perjury
that the foregoing is true and correct" that Isaac "Fail to Signal".  Where
**25** was that?  When did that happen?  Because defendant Ratcliffe on that hour of
**26** night of February 20, 2006 was not at the scene to eyeball any such occurence,
**27** if indeed there was any such incidence, which therefore in this legal proceed-
ing before The State of California Traffic Commissioner The Honorable Garrat,
**28** that defendant Ratcliffe credibly lacked the prerequisite sincere truth in/of

19

his Falsehood Citation he'd issued to Isaac, because it was relevant to the proceeding.

As such therefore, accordingly, defendant Ratcliffe has Committed PERJURY.

CONSPIRACY

Under The Rule of Law, Combination or agreement of 2 or more persons to commit, to achieve an unlawful act.

1.  Combination or agreement of 2 or more persons.

Here, defendant Bologna and his 2 unnamed back-up defendants officers combined in agreement to Cite Isaac Falsely with FALSEHOOD CITATION "IMPEDE TRAFFIC" when at 3AM AT THAT TIME OF THE NIGHT THERE WAS ABSOLUTELY NO TRAFFIC WHATSOEVER TO IMPEDE, AND DEFENDANT BOLOGNA WAS NOT HIMSELF EVEN PRESENT AT THAT LOCATION SHOWN IN THE CITATION OF 2/20/06 S El Camino Real @ 25th AVENUE.

Here, defendant Bologna and defendant Ratcliffe, and others in the San Mateo Police Department combined in agreement to Amend Citation to another New Citation.  THEY CAME UP WITH A LIE TO HIDE A LIE, thinking that because ISAAC'S RACE AND ETHNIC BACKGROUND BEING OF NO MATTER, BUT IT COULD GET SOMEONE INTO TROUBLE, OR PEOPLE INTO TROUBLE, AS HERE UNDER THE LAWS OF THE UNITED STATES, AND THE UNITED STATES CONSTITUTION: OFFICERS ARE LIABLE THEREFOR.

More tellingly, defendant Ratcliffe was not himself at the scene to eye-ball anything to his credibility, he therefore lack honesty and no integrity in his duty.

Therefore, there was combination or agreement of 2 or more persons.

Here, defendant Parisian and defendant Ratcliffe combined in agreement to exonerate the Unlawful and Illegal Citations/Actions of their fellow-officer defendant Bologna: to wit: Ratcliffe to Amend/Change Citation; defendant Parisian to exonerate - free from guilt defendant Bologna's Guilty Illegalities and Unlawful Activities because Isaac did not break nor violate any Traffic Law, Laws, Rules, Regulations, Codes.

Therefore, there was combination or agreement of 2 or more persons.

Here, defendant Manheimer, and defendant Parisian, and defendant Ratcliffe, combined in agreement: Amend Citation as described; Exoneration of Guilt, as described, and Approval of defendant Bologna's Unlawful and Illegal Citations by defendant Manheimer, as described heretofore.                                    20

1  Therefore, there was combination or agreement of 2 or more presons.

2  Here, defendant Callagy's letter to Isaac indicates agreement to endorse-
3  enforce-ratify the Unlawful Illegalities of officers down-the-line, as descri-
   bed.

4  Therefore, there was combination or agreement of 2 or more persons.

5  Here, defendant City of San Mateo Silence/Non-Response to Isaac's letter
6  to Mayor John Lee indicates impliedly the silent-majority combination in agree-
7  ment to lay-aside, put-off, heave-off response which constitutes COVER-UP
   defendant's Bologna's and other officers named and unnamed up and down the
8  Chain of Command of their Unlawful Illegalities.

9  Therefore, there was combination or agreement of 2 or more persons.

10 2.  Commitment and Achievement of Unlawful Act(s).

11 For defendant Bologna, and his unnamed 2 back-up defendants officers, as
12 described; for defendants Ratcliffe, Parisian, Callagy, Manheimer, as already
13 described; and for defendant City of San Mateo: Employer-Agency-Vicarious
   Liability therefor.

14 Theretofore, CONSPIRACY WAS COMMITTED, AND OCCURED, AND LIABILITY FOR CONSPI-
15 RACY THEREFOR.

16 ACCOMPLICE(S)

17 Under The Rule of Law, Aids and Abets the commission of a Crime.

18 1.  Act of Aiding

19 Here, defendant Ratcliffe acts to Aid defendant Bologna in his Unlawful and
20 Illegal Citations of Isaac;

21 Here, by defendant Callagy, his letter to Isaac constituted his act to Aid
22 his fellow-officers up and down the Chain of Command;

23 Here, defendant Manheimer acts to Aid defendant Parisian by Approval of his
   Wrongful Exoneration of fellow-officer defendant Bologna's Unlawful and
24 Illegal Citations of Isaac;

25 Here, defendant City of San Mateo by Its Silence Impliedly Endorsed-Enforced-
26 Ratification, and thusly acts to Aid all the Unlawful and Illegal Activities
   of Its Employees while they are employed to It, here San Mateo police officers,
27 named and unnamed, as described.

28 Therefore, the Act of Aiding was Committed.

21

2.   and the Intent to Aid, and to Abet (MALICE)

Here, defendant 2 unnamed back-up officers to defendant Bologna Intent to Aid Bologna, by their huddling in the back of defendant Bologna's police car, fishing what to Illegally and Unlawfully Cite Isaac for, and to Abet fulfilling the requisite MALICE, as above-described heretofore;

Here, defendant Ratcliffe by his Amend/Change the Original Citations and having the clear Intent to Aid by his fraudulently Amend/Change of the Citation, thereby/therewith have committed MALICE (MALICIOUS FRAUD), and DECEIT by his Act, and in his Misrepresentation of a material fact, to wit: because Isaac did Signal before turning when defendant Bologna pulled Isaac over, and said defendant Ratcliffe at that time and location was not himself to eye-ball incident;

Here, defendant Parisian had the Intent to Aid his fellow-officer defendant Bologna by Exoneration and thus by his Abetting fulfill the requisite MALICE, as above-described;

Here, defendant Manheimer had the clear Intent to Aid her underling officer down the Chain of Command defendant Parisian by her Approval, and thus by her Abetting fulfill the requisite MALICE, as above-described;

Here, defendant Callagy's letter to Isaac has the Intent to Aid his fellow officers, up and down the Chain of Command, and by such Abetting, thus fulfilling the requisite MALICE, as above-described;

Here, defendant City of San Mateo Silence/Non-Response to Isaac's letter constitutes Implied Aid to Its employees, and thus by Its Abetting of Its own employees, to hide them away from the piercing eyes of the world, fulfill the requisite MALICE, as above-described;

Therefore, there was Intent to Aid, and to Abet (MALICE) is satisfied.

3.   plus the Intent that the Crime Aid and Abet carries.
As here,
all the way from the Top of The Chain of Command, defendant City of San Mateo, to defendant San Mateo Police Chief Manheimer, to Police Captain Callagy, to Police Lieutenant Parisian, to San Mateo Amending Officer Ratcliffe, to San Mateo police defendant Bologna, his 2 back-up defendants unnamed officers, all of them had the clear Intent that Bologna's Unlawful and Illegal Citations carry, because of Amend/Change by Amending Officer defendant Ratcliffe, was on Court Calender and Court Docket on Friday, September 15, 2006.

22

And thus, accordingly therefore, the Crime of Accomplice(s) was Committed, holding defendants, named and unnamed Liable therefor.

FALSE IMPRISONMENT

1.  Where an act which causes person's confinement to a particular area.

Here, defendant Bologna and his 2 back-up unnamed defendants officers act to confine Isaac to the particular area of inside Isaac's car while the 3 named and unnamed defendants officers huddled together in the back of defendant Bologna's police car, fishing for What Citations to Fraudulently Cite Isaac for;

And thus, accordingly, the 3 defendants officers, named: defendant Bologna, and unnamed: his 2 back-up officers, act in concert to confine Isaac to a particular area.

2.  Where the person could not escape.

Here, there was no way no-how at all for Isaac to escape, to flee from his car, he would have been shot down; to take off in his car was unthinkable, the 3 defendants in concert work together to have given chase, ran him over, shoot him down: NO LOSS BECAUSE OF HIS RACE, AND PERSON OF COLOR ETHNIC MINORITY.

Therefore, the person Isaac could not escape.

3.  Where the Intent was to confine that person.

Here, the 3 defendants officers, defendant Bologna and his 2 back-up unnamed officers had the clear Intent to confine Isaac inside in his car.

And thus, accordingly the 3 defendants Bologna and his 2 unnamed back-up officers had the clear Intent to confine Isaac.

4.  Where there is actual confinement of person.

Here, there is actual confinement of Isaac inside his car.

Here, the presence of the 3 defendants officers had the clear Intent to actually confine Isaac inside his car.

And thus, accordingly therefore there exists actual confinement of Isaac inside his car.

23

1  5.  Where the person being confined is aware of his confinement.

2  Here, Isaac, being confined inside his car by the presence of the 3
3  defendants officers: defendant Bologna, and his 2 unnamed back-up officers,
   because Isaac was on his way to work and being fully awake, is thoroughlly
4  aware and alert at all times of his confinement.  And so, Isaac is being
5  confined inside his car is aware of his confinement.

6
   And thus, accordingly therefore, this constitutes FALSE IMPRISONMENT, AND
7  THE DEFENDANTS ARE LIABLE THEREFOR.

8
   COVER-UP
9

10 Where the Crime to COVER-UP Crimes Committed.

11 Here, defendant Ratcliffe committed Crime of Amend/Change Crimes committed
   by his fellow-officer defendant Bologna constituting COVER-UP Crimes defendant
12 Bologna and his 2 unnamed defendants officers committed Unlawfully and
13 Illegally, to New Citation  because he was not at the scene, thus himself
   have committed Crime.  What he did was Amend/Change the Original Citation by
14 defendant Bologna: COVER-UP LIES WITH MORE LIES. AND THE TRAFFIC COMMISSIONER
15 THE HONORABLE GARRAT CLEARLY SAW ALL THESE, AND OUTRIGHT DISMISS THE CASE(S),
16 BY THROWING THE CASE(S) OUT OF HIS COURTROOM!

17 Here, defendant Parisian committed the Crime of COVER-UP of fellow officer
   defendant Bologna by Unlawful and Illegal Exoneration of said Crimes, which
18 Moreover constitutes VIOLATIONS OF DUE PROCESS;

19
   Here, defendant Manheimer committed the Crime of COVER-UP of underling officer
20 down the Chain of Command defendant Parisian by her Approval of the Crimes
21 committed by defendant Bologna, and the co-crimes of Parisian Unlawful and
   Illegal Exoneration because such is within the domain of the Law Court: and
22 incidendently, The Law Court of The Traffic Commissioner The Honorable Garrat
23 saw through all these Crimes, and thus DISMISS their Case(s) against Isaac;

24 Here, defendant Callagy committed the Crime of COVER-UP by endorsing-enforcing-
25 ratification Crimes of defendants officers by letter to Isaac;

26 Here, the Silence from defendant City of San Mateo constitutes COVER-UP of
   Crimes committed by Its Employees: Police officers, named, and unnamed.
27
   Here, the letter from City Attorney Shawn M. Mason constitutes more COVER-UPS.
28

24

Whatever Crimes our fellow-employees have committed: COVER-UP. Lock the Key. Look the other way. Act innocent as doves. COVER-UP. JUST COVER-UP.

Accordingly therefore, the COVER-UP(S), COMMITTED THEREFOR.

EMOTIONAL DISTRESS

Where a person's emotions wrought havoc because of some external stimulus (stimuli) causing such person inevitable trauma and disturbance to his emotions causing such person distress out of ordinary everyday regularity of normality, such person encounters sufference from Emotional Distress.

Here, ever since the Second (2nd) Incident of Unlawful and Illegal Traffic Stop caused directly, wilfully, knowingly, intentionally, to Isaac by defendants Reyna, and Lethin, which had wrought havoc with Isaac's normal functioning heretofore of everyday regularity of normality, but because of the external stimuli of these San Mateo police officers carrying guns, and they can shoot Isaac in the dark since the 2 Unlawful and Illegal Traffic Stops occured at 3:10 AM, in the nighttime, and yet again 30 minutes later, such horrific traumatic encounter have inevitably brought on direct resultant consequential sufferances to Isaac, causing him inevitably EMOTIONAL DISTRESS.

Moreover, emphatically, these officers have in a way taken away Isaac's freedom to drive on the road whenever, whereever he wants to since he carries Driver's License in Good Standing, BUT, will they continue with their HARASSMENTS, AND bringing on EMOTIONAL DISTRESS: Daymares about the Incident, Nightmares concerning the Incident.
Accordingly, defendants Reyna, and Lethin are LIABLE THEREFOR.

HARASSMENT, 2ND COUNT: RACIAL VITUPERATIVE INSULT, 2ND COUNT

United States Code, Title 42, Section 1983: 42 U.S.C. Sec 1983. Aforestated.

HARASSMENT OF INDIVIDUALS BASED ON THEIR RACE, ETHNIC BACKGROUND VIOLATES RIGHTS GUARANTEED UNDER THE 1ST, 4TH, AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION. Also Aforestated.

Here, the dual actions of defendants Reyna and Lethin Unlawful and Illegal Traffic Stops in one night: 30 minutes apart one from the other, in their successive short-time duration, were based entirely on Isaac's Race, and Ethnic Background of visible person of color.

Moreover, these were HATE-CRIMES .

25

Lethally fully intentionally targeted onto Isaac by defendants Reyna, and Lethin: ("DID MY PARTNER...?")  comprises of the composite of the embodiment of Harassments, and Racial Vituperative Insults.

Therefore Isaac's Rights Guaranteed Under The 1ST, 4TH, AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION, ARE VIOLATED.

Therefore, both defendants Reyna and Lethin are LIABLE THEREFOR.

HARASSMENT, 3RD COUNT

Where words, gestures, or actions of 1 person irritate, impede, torment another.

Here, the actions and gestures of defendants Reyna/Lethin by Unlawful and Illegal Stopping of Isaac at 3:10AM in that time of night on July 12, 2007 even though Isaac had fully complied with Traffic Laws, Rules, Regulations, Codes irritate  Isaac, impede Isaac who was on his way to work, to get to his job in time to punch in before his shift at 4AM at that time of night.

Here, Isaac was first pulled over in San Mateo at 3:10AM, the first officer called the 2nd officer to also pull Isaac over again in Hillsdale: to wit, "Did my partner...?. "

Accordingly therefore, defendants Reyna and Lethin by their words, gestures, actions did irritate, impede, and torment Isaac.

Therefore, both officers defendants Reyna and Lethin are Liable for HARASSMENT.

HARASSMENT, 4TH COUNT

Rule, abovestated.

Here, after first pull-over at 3:10AM, then 30 minutes later, the second pull-over  the action, the gestures, the words, such awful words, of/by defendant Reyna/Lethin by Unlawful and Illegal Stopping at 3:40AM at that time of night, and spouting off violent outbursts of vehement obviously obscene words, vulgar words incomprehensible to Isaac, torment Isaac.

And thus, accordingly both officers Reyna, and Lethin are LIABLE TO ISAAC FOR HARASSMENT, therefor.

26

CIVIL RIGHTS VIOLATIONS: 1ST COUNT OF MENTAL ABUSE, AND PSYCHOLOGICAL ABUSE

PSYCHOLOGICAL AND MENTAL ABUSE PRESENT CIVIL RIGHTS VIOLATIONS COVERED BY
42 U.S.C. Sec 1983

Under 42 U.S.C. Sec 1983, Where every person who, under color of any statute
...of any State subjects any citizen of the United States...to deprivation
of any rights..secured by the Constitution and Laws...shall be Liable to the
party thus injured..."

Here, the Unlawful and Illegal Traffic Stop  by  1st police officer defendant
Reyna/defendant Lethin, and pulled Isaac over after following Isaac for many
blocks who was in full compliance with Traffic Laws, Rules, Regulations,
Codes, deprived Isaac of his Civil Rights secured as to him by the Civil
Rights, supported by The Constitution of The United States, and The Laws
of The United States, making defendant Reyna/defendant Lethin Liable as to
Isaac for having Violated his Civil Rights: moreover constituting Psychological
Abuse, and Mental Abuse.

Accordingly, therefore, defendant Reyna/defendant Lethin Liable to Isaac
therefor.

CIVIL RIGHTS VIOLATIONS: 2ND COUNT OF MENTAL ABUSE, AND PSYCHOLOGICAL ABUSE

PSYCHOLOGICAL AND MENTAL ABUSE PRESENT CIVIL RIGHTS VIOLATIONS: 42 U.S.C.
Sec 1983, presented heretofore above.

Here, the 2nd Unlawful and Illegal Traffic Stop by the 2nd police officer
defendant Reyna/defendant Lethin who had pulled Isaac over in Hillsdale having
closely followed Isaac for 12 long blocks even though Isaac fully complied with
Traffic Laws, Rules, Regulations, Codes, and then questioned Isaas as to whe-
ther his partner had pulled Isaac over in San Mateo, and then his spouting off,
sputtering, exploding in outbursts of vehement disgusting verbage incompre-
hensible to Isaac constitute Psychological Abuse, Mental Abuse, Violations of
Isaac's Civil Rights, Racial Vituperative Insults, and Furtherance of More
Harassments.

And thus, accordingly defendant Reyna/Lethin is LIABLE THEREFORE.

27

VIOLATIONS OF DUE PROCESS

Defendant Ratcliffe's tampering with fellow officer defendant Bologna's
Original Citations is evidentiary to what amounts to VIOLATION OF ISAAC'S
DUE PROCESS.

In the Rule of Law laid down in N.A.A.C.P. v. Clairborne Hardware Co.,
458 U.S. 886, 929, 102 S. Ct. 3409, 73 L. Ed. 2d 1215 (1982) the United
States Supreme Court Ruled that one who has knowledge of an Unlawful or
Tortious activity of another, to wit: 2 unnamed back-up defendants officers
to defendant Bologna who knew of their fellow officer's Unlawful or Tortious
activity; defendant Ratcliffe who knew of his fellow officer defendant Bologna's
Unlawful or Tortious activity; defendant Parisian who knew of his fellow
officers' Ratcliffe's and Bologna's Unlawful or Tortious Activities; and
likewise by defendant Callagy, and Approved of in Silence evoking Malicious
Silence by defendant Manheimer, and COVER-UPS of these Unlawful and Tortious
Activities by defendant City of San Mateo all constitute OBSTRUCTION OF JUSTICE
AND COVER-UPS, All the More inherent necessity therefor for Punitive Damages
because the Unlawful and Tortious Activities have become habitual and Chronic,
therefor.

Under this Supreme Court Ruling, defendants should therefore be held Liable,
and Accountable, because the Unlawful and Tortious Activities have become
systematic where the left hand knows what the right hand is up to, and vice-
versa, the Head knows what the feet have been up to, and vice-versa, inclusive
of the heart-beat rub-dub, dub-rub, you rub my back, and I'll rub yours', you
COVER my back, and I'll Cover your back, and the System thus up and down the
Chain of Command.

Therefore, Isaac's Due Process Rights have been violated by defendants, and
they should be held Liable and Accountable therefor.

HATE CRIME

Where person subjects another to lowly abuse subjugation of lesser Inferiority
abusive treatment(s) by actions commits HATE CRIME, or unmistakably by words,
by gestures.

Here, when and where defendant Bologna Racially Profiles Isaac to lowly abuse
subjugation of lesser, Inferiority treatment because of Isaac's Race, his
Ethnic background, his skin color, by Bologna's dangerously tailgating Isaac

28

1  with simultaneous knowability that he would not have done the same to a white
2  person, such action unmistakably is HATE-CRIME, as here.

3  Here, when and where defendant Ratcliffe criminally Amends/Changes Citations
   without Due Process, as aforementioned, of enquiring of Isaac, by such action/
4  gesture subjugating Isaac to lesser Inferior abusive treatment because of
5  Isaac's skin color, his Race, unmistakably commits HATE-CRIME.

6  Here, when and where defendant Parisian by his vehement insistence of fairy-
   tale of 2 different police cars tailgating Isaac, and no involvement from his
7  fellow-officer Bologna, even though Isaac kept repeating it was defendant
8  Bologna who tailgated him, and he was the very one who signed the Citations
9  he issued to Isaac; where thereupon defendant Parisian became viciously angry,
   severely mad, and pissed-off and immediately CUT-OFF Interview had thus subju-
10 gated Isaac to lesser Inferior abusive treatment because of Isaac's skin-color,
11 and his Race, had unmistakably commits HATE-CRIME.

12 Here, when and where defendant Manheimer Approved underling officer down the
13 Chain of Command defendant Parisian's actions, Impliedly subjugating Isaac
   to lesser, unprofessional, uncalled-for Inferior abusive treatment all
14 because of Isaac's skin color, his Race, had unmistakably commits HATE-CRIME.

15 Here, when and where defendant City of San Mateo maintained Silence because of
16 Complaint to Mayor John Lee from Isaac about the First (1st) Incident; such
17 Silence constitutes Abuse because of Isaac's Race, his skin-color, had thus
   unmistakably commits HATE-CRIME.
18
   Here, when and where defendant Reyna/defendant Lethin subjected Isaac know-
19 ingly and intentionally to 2nd Unlawful and Illegal Traffic Stop in one night
20 30 minutes apart knowing his partner had just previously pulled Isaac over
21 30 minutes earlier, and Isaac had steadily complied with Traffic Laws, Rules,
   Regulations, Codes, and then spouting off violent, vehement outbursts of
22 obviously obscene verbage even though incomprehensible to Isaac, such unpro-
23 fessional action subjugated Isaac to Inferior abusive treatment because of
24 Isaac's skin color, his Race, had unmistakably commits Hate-Crime.

25 Therefore, HATE-CRIMES HAVE BEEN COMMITTED, AND DEFENDANTS' LIABILITY AND
   ACCOUNTABILITY THEREFOR.
26
   LIABILITY OF CITY OF SAN MATEO
27
   Under The United States Supreme Court Ruling in Monell, above described
28 and in here, since evidence determinedly definitely from all proper perspective

29

that COVER-UPS are systematic, rampant, as above described, and repeated failures to take necessary corrective actions against habitual/chronic errant police officers who have acted Unlawfully and Illegally, as above-described, such Unlawful and Illegal Actions are part of municipal's policy, or custom as here applicable to defendant City of San Mateo: Employer-Agency-Vicarious Liability.

Accordingly, therefor, Liability of defendant City of San Mateo theretofore.

VICARIOUS LIABILITY

Under Rule of Law, the Liability of 1 person for the acts of another; Indirect Liability  because of Legal Responsibility eg. the Liability of the Employer for the act(s) of employee(s), while the employee(s) is (are) under employment of/by/for Employer.

Here, the Liability of Employer City of San Mateo for the actions of Its Employees: defendant Bologna while under employment to City of San Mateo; defendants 2 unnamed officers back-up officers to defendant Bologna while under employment to City of San Mateo; defendant Ratcliffe while under employ- ment to City of San Mateo; defendant Parisian while under employment to City of San Mateo; defendant Callagy while under employment to City of San Mateo; defendant Manheimer while under employment to City of San Mateo; defendant Reyna while under employment to City of San Mateo; defendant Lethin while under employment to City of San Mateo; defendant City of San Mateo because as The Employer of these Employees, named and unnamed, is thus at Top of The Chain of Command, AND THUS BY LAW LIABILITY ATTACHES.

Accordingly, therefore, The City of San Mateo is Vicariously Liable therefor.

OBSTRUCTION OF JUSTICE

Where Crimes have been committed, and there are Actions to Obstruct Justice.

Here, defendant Bologna committed crimes; his fellow officers up and down the Chain, up and down the totem pole, move in quick to Obstruct Justice by themselves committing crimes to do away with Justice;

Ironically these are law-officers,

Here, defendant Ratcliffe, Amend/Change Citations, such Action constitutes Obstruction of Justice;

Here, defendant Parisian committed crime, his superior (s) Act to Obstruct Justice, creating in the process Mud everywhere, and pot-holes everytime;

Here, defendant Manheimer commits crime, her superior and Employer City of San Mateo COVER-UP, thereby OBSTRUCTION OF JUSTICE, and thereby by such an action instead of slamming the doors shut to hide away and buried these Crimes, instead opens the door wide for all to see when hearing of all these Unlawful Illegalities.

Accordingly, therefore, defendants are Liable and Accountable for OBSTRUCTION OF JUSTICE THEREFOR.

PUNITIVE DAMAGES

Punitive Damages are Judiciously and Justifiably required in this Case because defendants' conduct, individually and collectively are so outrageous (AS HERE).

Punitive Damages are Damages meant strategically to punish defendants, (NECESSARY HERE) for their Unlawful, Illegal wrongdoings and activities to Isaac, such that defendants' conduct shock the conscience, were and are extremely awful (AS HERE), demonstrated reckless indifference (AS HERE), and were simultaneously wilful (AS HERE), with wanton disregard as to Isaac, Outrageously Violations of Isaac's Rights, as described heretofore.

Punitive Damages are to reduce defendants' incentives to continue on unstopped with their engagings in Illegal, Lawless, Unjustified, Wrongful Conduct (AS HERE).

Punitive Damages act as the big stick to punish defendants (NECESSARY HERE), and thereby to deter defendants (NECESSARY HERE), to think twice about the consequences direct and indirect, consequentially and inconsequentially of their Illegal, Unlawful, Wrongful, Unconstitutional, Unjustified Actions (AS HERE).

Also, to deter defendants (AS HERE) from their Unlawful, (AS HERE), Illegal Wrongdoings (AS HERE), not to ever repeat as to Isaac.

Therefore, as to Isaac, Isaac is entitled to Punitive Damages.

31

## DAMAGES

| | | |
|---|---|---|
| 1. | Violations of 4TH AMENDMENT RIGHT: ILLEGAL DETECTION | $1.5 Million |
| 2. | Perjury, Multicounts; Conspiracy, Multicounts | $1.5 Million |
| 3. | Accomplice(s), Multicounts | $1.5 Million |
| 4. | False Imprisonment | $1.5 Million |
| 5. | Cover-Up, Obstruction of Justice | $1.5 Million |
| 6. | Civil Rights Violations, Violations of Due Process | $1.5 Million |
| 7. | Harassment: Racial Vituperative Insults, Multicounts | $2 Millions |
| 8. | Mental Abuse, Psychological Abuse | $3 Millions |
| 9. | Emotional Distress | $3 Millions |
| 10. | Hate-Crimes, Multicounts | $4 Millions |
| 11. | Punitive Damages | $5 Millions |
| | TOTAL | $26 Millions |

## CONCLUSION

The Incidents heretofore described are evidentiary of City of San Mateo police officers' systematic police Racial Profilings, those that are described herein, Hate-Crimes, Police Abuse, Police Misconduct, Perjury, Conspiracy, Accomplices, Cover-Ups, Harassments, Racial Vituperative Insults, Mental Abuse, Psychological Abuse, Emotional Distress Causation, Violations of Civil Rights, Violations of Constitutional Rights, Violations of Due Process, and Thus, Therefore, Isaac is entitled to the Damages therefor of $26 Millions.

Your Honor, The Right Honorable need to Grant Damages Isaac seeks for there to be Judicious Justice in this Case.

Your Honor right now need to put an Immediate Stop to All These Unlawful Illegalities, inclusive of Lies and Falsehoods by defendants, because of their Lies before The State of California Traffic Superior Court, if they are not Stopped, they will continue on with their Wrongdoings before The United States

32

1    Federal Court.

2    And thus, Your Honor has the Power and Authority to put STOP NOW to all these

3    defendants' Obstructions of Justice, and their Violations of Laws of The

4    United States, inclusive of Violations of Civil Rights, and also Violations

5    of Rights Guaranteed Under/By The United States Constitution, and Traffic Laws,

6    Rules, Regulations, Codes, Codes, and Statutes; otherwise they become Jokes and

7    and Laughing Stock to the world at large.

8    May The Right Honorable Judge of The Federal Court of The United States The

9    Right Honorable Maxine M. Chesney be thoroughlly aware from get-go that these

10   defendants police officers in The State of California Superior Court/Traffic

11   Court have LIED before That Highly Honorable Court, and as such, thus,

12   they will LIE BEFORE YOUR SUPREMELY-HIGH HONORABLE COURT, Your Right Honorable

13   Court, The United States Federal Judge Maxine M. Chesney.

14   And so, Your Honor Please:

15                          ON ALL CLAIMS

16

17   For Damages ,

18   For Costs of Suit Incurred herein,

19   For Court to COURT-ORDER NO RETALIATION, NO REVENGE,

20   and FOR SUCH OTHER AND FURTHER RELIEF

21   THE RIGHT HONORABLE COURT DEEMS JUST AND FAIR AND PROPER, FOR JUSTICE TO CARRY.

22   Dated:
              February 26, 2008

23

24                                    Respectfully Submitted

25

26                              by _Aisake (Isaac) P. Naufahu_

27                                    AISAKE (ISAAC) P. NAUFAHU
                                      Pro Se Litigant

28

EXHIBIT 1

ISAAC NAUFAHU

No. 12-048

PAY PERIOD ENDING 02/19/06

| SHOP ORDER | OP CODE | HOURS |
|---|---|---|
| | | |

IN/OUT columns

REGULAR HRS. 8
OVERTIME 2
DBL. TIME —
OTHER —
TOTAL HRS.

FEB 17

4.00

---

SHOP ORDER No. 12-048

PAY PERIOD ENDING 2/18/06

feb-18-06

| SHOP ORDER | OP CODE | HOURS |
|---|---|---|

REGULAR HRS. 8.0
OVERTIME 8.0
DBL. TIME —
OTHER —
TOTAL HRS. 8.0

FEB 18

2:00

---

SHOP ORDER No. 12-048

PAY PERIOD ENDING 2/1

feb-19-06

No-work

| SHOP ORDER | OP CODE | HOURS |
|---|---|---|

REGULAR HRS. —
OVERTIME 8
DBL. TIME —
OTHER —
TOTAL HRS. 8

FEB 19



**NAUFAHU**

No. 12-048    PAY PERIOD ENDING 02/26/06

| SHOP ORDER | OP CODE | HOURS |
|---|---|---|

REGULAR HRS. — 8
OVERTIME — 2
DBL. TIME — —
OTHER — —
TOTAL HRS. — 10

'06 FEB 23 PM 2:31
'06 FEB 23 AM

Tofa 4:00

---

**ISAAC NAUFAHU**

No. 12-048    PAY PERIOD ENDING 02/26/06

| SHOP ORDER | OP CODE | HOURS |
|---|---|---|

REGULAR HRS. — 8
OVERTIME — 2
DBL. TIME — —
OTHER — —
TOTAL HRS — 10

'06 FEB 24 PM 2:31
'06 FEB 24 AM

Tofa 4:00

---

ISAAC P. NAUFAHU
12-048
SATURDAY 2/25

No. 12-048

| SHOP ORDER | OP CODE | HOURS |
|---|---|---|

REGULAR HRS. — 7
OVERTIME — —
DBL. TIME — —
OTHER — —
TOTAL HRS — 7

SAT Feb 25-06
No lunch

'06 FEB 25 AM

EXHIBIT  2

*(handwritten top left)* BOTH COUNTS were DISMISSED ↑

---

NAME OF COURT: **MUNICIPAL COURT**
STREET ADDRESS: **800 N. HUMBOLDT STREET**
MAILING ADDRESS:
CITY AND ZIP CODE: **SAN MATEO, CA 94401**
BRANCH NAME: **CENTRAL BRANCH**
TELEPHONE: **(650) 573-2622**

### PEOPLE OF THE STATE OF CALIFORNIA
vs.

DEFENDANT: **Aisake Pohahau Naufahu**

### NOTICE OF CORRECTION AND PROOF OF SERVICE
### (Vehicle Code, § 40505)

AMENDING OFFICER NAME AND NO.: *(handwritten)* 06
DEPARTMENT/AGENCY: **SAN MATEO POLICE**

CITATION NUMBER: **84-277289**
CASE NUMBER:

1. A *Notice to Appear/Notice to Correct Violation* was issued to you by an officer of this department on (date): **2-20-06**

2. The citation issued to you contained an error as indicated by the items checked below. This notice of correction does not affect the validity of the citation or the required court appearance.

☐ Date/time of violation should be _____

☐ Date/time of court appearance should be changed from _____ to _____

☑ Violation section(s) should be changed from **22400(A)** to **22109 VC**

☐ Location of violation should be changed from _____ to _____

☐ Other (specify):

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: **2/21/06**                    (Signature of officer)

Form Adopted for Mandatory Use
Judicial Council of California
TR-100 [New January 1, 2000]

(Proof of service on reverse)

---

**CITY OF SAN MATEO   POLICE DEPARTMENT**

NOTICE TO APPEAR    ☑ Traffic  ☐ Nontraffic   **84-277289**
                    ☐ Misdemeanor

| Date of Violation | Time | Day of Week | Case No. |
|---|---|---|---|
| 2/20/06 | 3:02 PM ☐AM ☑PM | S M T W T F S | |

Name (First, Middle, Last)    ☐ Owner's Responsibility (Veh. Code § 4000)
2. **Aisake Pohahau Naufahu**
Address
3. **539 N. Claremont St.**

| City | State | ZIP Code | ☐ Juvenile (Phone No.) |
|---|---|---|---|
| 4. San Mateo | CA | 94401 | ( ) |

| Driver Lic. No. | State | Class | Commercial | Age | Birth Date |
|---|---|---|---|---|---|
| 5. A4517761 | CA | | ☐ Yes ☐No | 55 | 5/24/51 |

| Sex | Hair | Eyes | Height | Weight | Race | Other Description |
|---|---|---|---|---|---|---|
| 6. M | BLK | BRO | 5-10 | 185 | |

Veh. Lic. No. or VIN    State    Reg. MO/YR.    ☐ COMMERCIAL VEHICLE (Veh. Code § 15210(b))
7. **POLYLUV**  CA  05/06

| Yr. of Veh. | Make | Model | Body Style | Color | ☐ HAZARDOUS MATERIAL (Veh. Code § 353) |
|---|---|---|---|---|---|
| 8. 1984 | BUICK | Park Ave | 4DR | BRO | |

Evidence of Financial Responsibility   CHP/DOT/PUC/ICC
9. **None**

Registered Owner or Lessee   ☐ Same as Driver
10. **Naufahu, Meleny Yurette**
Address   ☐ Same as Driver
11. **118 N. Humboldt St.**

| City | State | ZIP Code |
|---|---|---|
| 12. San Mateo | CA | 94401 |

Correctable Violation (Veh. Code § 40610)   ☐ Booking Required (see reverse)   Misdemeanor or Infraction (Circle)

| | Yes | No | Code and Section | Description | |
|---|---|---|---|---|---|
| 13. | ☐ | ☒ | 22400(a)VC - Impede traffic | M  (I) |
| 14. | ☐ | ☒ | 16028(a)VC-NO Ins. | M  (I) |
| 15. | ☐ | ☐ | | M  I |
| 16. | ☐ | ☐ | | M  I |

| 17. | Speed Approx. 25 | P.F./Max. Spd. 35 | Veh. Lmt. 35 | Safe 3X | Radar | ☐ Continuation Form Issued | N |

18. Location of Violation(s)   City/County of Occurrence
**S. El Camino Real @ 25th Ave.**

19. Comments (Weather, Road & Traffic Conditions)   ☐ Accident

20. ☐ Violations not committed in my presence, declared on information and belief.
I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct.

21. Executed at (Place) **Bolina**   Violation location **95**   To   Dates Off
Arresting or Citing Officer   Serial No.

22. Date   Name of Arresting Officer, if different from Citing Officer   Serial No.   To   Dates Off

23. WITHOUT ADMITTING GUILT, I PROMISE TO APPEAR AT THE TIME AND PLACE INDICATED BELOW.
X Signature

24. WHEN: ON OR BEFORE THIS DATE: **4/14/06**   Time: **1:30** ☐AM ☑PM
Time: ___ ☐AM ☐PM

WHAT TO DO:   FOLLOW THE INSTRUCTIONS ON THE REVERSE.
WHERE:   Superior Court of California, County of San Mateo.
25. ☐ NORTHERN BRANCH - 1050 Mission Rd., So. San Francisco, CA 94080   (650) 877-5355
☑ CENTRAL BRANCH - 800 North Humboldt St., San Mateo, CA 94401   (650) 573-2622
☐ SOUTHERN BRANCH - Traffic 500 County Center, Redwood City, CA 94063   (650) 363-4300
☐ SOUTHERN BRANCH - CRIMINAL - 4th FLOOR HALL OF JUSTICE   (650) 363-4300
400 County Center, Redwood City, CA 94063
☐ JUVENILE TRAFFIC COURT - 21 Tower Rd., San Mateo, CA 94402   (650) 312-8887
26. ☐ To be notified   ☐ You may arrange with clerk to appear at a night session of the court.

Judicial Council of California Form   COURT COPY   | SEE REVERSE
Rev. 09-20-05 (Veh. Code, §§ 40500(b), 40513(b), 40522, 40600; Pen. Code, § 853.9)   TR-130

COMPUTER & BUSINESS PRINTING (650) 873-1710   M453864 (09/05)

*(vertical right margin)* 84-277289

---

*(handwritten bottom left)* "Amended" amended after daughter I talked to him on 1/20/06 ✓
* COPY OF THE AMENDED "NEW CITATION"

*(handwritten bottom right)* * COPY OF THE "ORIGINAL CITATION"
231959
BOTH COUNTS were DISMISSED

EXHIBIT    3



**San Mateo Police Department**

2000 South Delaware Street
San Mateo, California 94403-1497
Support Services Telephone: (650) 522-7620
FAX: (650) 522-7601
http://www.cityofsanmateo.org

July 31, 2006

Mr. Aisake Naufahu
339 No. Claremont Street
San Mateo, CA 94401

Dear Mr. Naufahu:

On March 20, 2006, you filed a complaint against Officer Bologna alleging that he drove his patrol car in a manner that violated the California Vehicle Code, initiated a vehicle stop based on ethnicity, falsified a traffic citation, and conducted an unlawful detention. These allegations, if sustained, would be in violation of the following San Mateo Police Department General Orders:

> Chapter 12, Code of Conduct; Section 8, Adherence to City Personnel Rules and Regulations; part 5, Performance; paragraph F, which states, "The wrongful or unlawful exercise of authority on the part of any employee for malicious purposes, personal gain, and/or willful deceit."

> Chapter 12, Code of Conduct; Section 2, Civility; paragraph 3, which reads, "Members and employees shall be courteous and orderly in their contacts with the public. They shall perform their duties in a professional manner at all times. Upon request, members and employees are required to supply their names and badge identification numbers."

Your complaint was assigned to Lieutenant Alan J. Parisian to investigate. Lieutenant Parisian conducted an extensive and exhaustive investigation into this matter wherein he reviewed your complaint, interviewed you, the involved officer, witnesses, and supervisors, and reviewed the dispatch tapes. All of the letters you sent to us have been reviewed and are part of the investigation file.

Lieutenant Parisian has completed his investigation and found that Officer Bologna is exonerated on all allegations. That is, the investigation disclosed that Officer Bologna acted in accordance with the laws and policies outlined for conducting vehicle stops, and that the stop was justified, lawful, and proper.

Lieutenant Parisian's investigation has been reviewed and approved by Susan E. Manheimer, Chief of Police.

July 31, 2006
Mr. Aisake Naufahu
Page 2

It saddens the Chief and every member of this Police Department whenever a citizen forms the belief that they were not served in an appropriate or proper manner by a member of the San Mateo Police Department.

While it may be of little consolation to you at this time, rest assured that the Chief, and every member of this Department, remains committed to serving and protecting the public to the utmost of our ability, including, but not limited to, the fair, impartial, and professional \enforcement of the laws of this jurisdiction. At this point, I can only hope that you will one day come to believe the San Mateo Police Department, and the members employed by this agency, have in the past, do currently, and will always, hold these aspirations paramount.

In closing, I hope that you know the San Mateo Police Department members are here to protect and serve you, as they do for all members of the community. If you are in need of any assistance in the future, you have only to ask either me or any of my fellow San Mateo police personnel.

If I can assist you in any way or explain our process for investigating this matter, please feel free to contact me at (650) 522-7652.

Sincerely,

Mike Callagy
Captain
Support Services

c:    Chief of Police Susan E. Manheimer
      Lieutenant Alan Parisian
      File

EXHIBIT 4

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

HON. STEPHANIE GARRAT
commissioner
SuPERioR CouRT central
Branch
800 NoRTH HumBOLDT ST
SAN MATEO; CA. 94401,

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

x **RECEIVED**  ☐ Agent  ☐ Address

B. Received by (Printed Name)  **SAN MATEO COUNTY**  C. Date of Delivery

SEP 1 8 2006

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

Clerk of the Superior Court
By ___ **FRANK NARDO**
**DEPUTY CLERK**

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered      ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)      ☐ Yes

2. 7006 0810 0000 3973 4183

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-15

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

**OFFICIAL USE**

| | | |
|---|---|---|
| Postage | $ | $0.63 |
| Certified Fee | | $2.40 |
| Return Receipt Fee (Endorsement Required) | | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $4.88  09/16/2006 |

Sent To  HON. STEPHANIE GARRAT
Street, Apt. No.;  SUPERIOR COURT
or PO Box No.  CENTRAL BRANCH
City, State, ZIP+4  800 N. Humboldt ST; CA. 94401

PS Form 3800, June 2002      See Reverse for Instructions

7006 0810 0000 3973 4183

CITY OF SAN MATEO  POLICE DEPARTMENT
☐ Misdemeanor  184- 277289

⌐R  COURT CENTRAL BRANCH
RTH HUMBOLDT STREET
ATEO, CA  94401

**NOTICE OF BAIL**

A NOTICE TO APPEAR AND CITATION CHARGING A VIOLATION OF THE BELOW DESCRIBED SECTIONS
HAS BEEN FILED WITH THIS COURT. UNLESS YOU APPEAR IN COURT AND ANSWER THESE CHARGES
OR DEPOSIT BAIL AS INDICATED YOU MAY FACE FURTHER CHARGES, INCREASED BAIL, ARREST, OR
LOSS OF DRIVING PRIVILEGES OR ANY COMBINATION OF SUCH CONSEQUENCES.

⚹ To make a copy.

01141TA26.A.1.819.1.2.0.308

NAUFAHU AISAKE POHAHAU
339 N CLAREMONT ST
SAN MATEO CA  94401-1725

YOU FAIL TO RESPOND WITHIN 10 (TEN) DAYS AFTER THE DUE DATE BELOW, YOU WILL BE CHARGED AN ADDITIONAL
SESSMENT, PURSUANT TO SEC 1214.1 OF THE PENAL CODE, AND MAY BE SUBJECT TO YOUR DRIVERS LICENSE BEING WITHHELD
SUSPENDED BY DMV. THE CIVIL MONEY ASSESSMENT UNDER 1214.1 PC MAY BE COLLECTED BY ATTACHMENT OF YOUR WAGES,
R SPOUSE'S WAGES, OTHER PROPERTY, AND CAN INTERCEPT ANY TAX REFUNDS. THE CIVIL ASSESSMENT REMAINS IN EFFECT
10 YEARS, OR UNTIL PAID.
URE TO COMPLY WITH THIS NOTICE BY 04/04/06 WILL RESULT IN FURTHER CHARGES AND INCREASED BAIL. BAIL OF $843.75 may
nt by mail on or before 04/04/06. TO APPEAR IN COURT bring this notice to the Court on or before 04/04/06, on TUESDAY between 12:30
and 1:30 p.m. OR on MONDAY, WEDNESDAY, and THURSDAY before 8:30 a.m.
ARE NOT ELIGIBLE FOR TRAFFIC SCHOOL.

same as on 6
Amended (the ")NEW CITATION"

| | VIOLATION(S) |
|---|---|
| VC-22109 | Signal When Stopping |
| VC-16028A | Evidence Financial Resp |

| EFENDANT NAME | VIOLATION DATE | CITATION NO. | APPEARANCE DATE | DOCKET NO. |
|---|---|---|---|---|
| AUFAHU AISAKE POHAHAU | 02/20/06 | 277289 | 04/04/06 | 231959-T |

84- 277289

REVERSE
TR-130

0884 (09/05)

RETAIN THIS PORTION FOR YOUR RECORDS

DETACH AND RETURN THIS REMITTANCE PORTION WITH YOUR PAYMENT

| ANT NAME | VIOLATION DATE | CITATION NO. | APPEARANCE DATE | DOCKET NO. |
|---|---|---|---|---|
| U AISAKE AHAU | 02/20/06 | 277289 | 04/04/06 | 231959-T |

**DO NOT MAIL CASH.**
**MAKE CHECK OR MONEY ORDER PAYABLE TO:**

ENT  AND/OR  800 N. Humboldt Street
RRECTION MAY  San Mateo CA  94401

SUPERIOR  COURT CENTRAL BRANCH

, POSTAL SERVICE



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

Sender: Please print your name, address, and ZIP+4 in this box •

AISAKE P. NAUFAHU
339 N. CLAREMONT STreet
SAN MATEO; CA. 94401,

EXHIBIT   5



**OFFICE OF THE CITY ATTORNEY**

330 West 20th Avenue
San Mateo, California 94403-1388
Tel: (650) 522-7020
Fax: (650) 522-7021

TO:    Aisake P. Naufahu
       339 North Claremont St.
       San Mateo, CA 94401

DATE: February 5, 2007

## REVISED

RE: ·    Claim of Aisake P. Naufahu

Dear Sir:

NOTICE IS HEREBY GIVEN that the claim you presented to the City of San Mateo on December 07, 2006, insofar as it relates to a cause of action for injury to person or personal property, is not being considered by the City of San Mateo because it was not presented within six months after the event or occurrence as required by law.  See Sections 901 and 911.2 of the Government Code. Because that portion of the claim was not presented within the time allowed by law, no action was, or will be, taken on that portion of the claim;

Your only recourse at this time is to apply without delay to the City of San Mateo for leave to present a late claim.  See Section 911.4 and Section 946.6 of the Government Code.  Under some circumstances, leave to present a late claim will be granted.  See Section 911.6 of the Government Code.

YOU ARE FURTHER NOTIFIED that insofar as your claim relates to causes of action other than injury to person or personal property, your claim was rejected by the City of San Mateo on February 05, 2007.

### WARNING

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim.  See Government Code Section 945.6.

You may seek the advice of an attorney of your choice in connection with this matter.  If you desire to consult an attorney, you should do so immediately.

Very truly yours,

Shawn M. Mason
City Attorney San Mateo

cc:    ABAG PLAN

EXHIBIT 6



AISAKE (Isaac) P. NAUFAHU
339 N. Claremont St.
SAN MATEO; CA. 94401.

PH (650) 342-4817
(650) 342-8565

July 14th, 2007

TO:

Two (2) San Mateo Police Officers were harrassing me Thursday Morning (July 12th 2007) while I was on my way to my job in San Carlos — and I was scheduled to start work at 4:00 AM.

The first (1st) San Mateo Police Officer (head shaved with no hair) was following behind me on Delaware Street in San Mateo for about 4 blocks and pulled me over at the corner of 2ND Avenue on Delaware Street at 3:10 AM, or very shortly after without me violating any traffic codes

or laws — and he asked for my driver's license and he took it and went back to his Police Car to "check me out" on the Police Computer database or whatever for about 4 or 5 minutes and then came back and handed me back my Driver's License without giving me a citation.

Then I stopped by at a gas station on 3rd avenue (San Mateo) to put gas in my car and I was there maybe 4 minutes or so — then I went to the Safeway Store on 19th avenue (San Mateo) to pick up 2 donghnuts and 2 other items and I was at safeway maybe 5-6 minutes and left safeway and went over and made a left turn on El Camino Real heading toward San Carlos to my job.

As I was passing through 25th avenue (San Mateo) — I noticed a car following me but I really did not pay any attention to it — and as I was passing through 37th avenue (

Pg 3

(Now it's Hillsdale) —
and as it turned out that
the car that was following me
on El Camino Real all the
way up to 37th avenue was
a San mateo police car — and
the San Mateo Police Officer pulled
me over (one) block south
of 37th avenue — and I noticed
it was a different San mateo
Police Officer (2ND Police Officer)
— he walked up to me with
his flashlight and the
first words coming out of his
mouth : " Did my partner pull
you over ?" and I responded :
" yes, a San Mateo Police Officer
first pulled me over in
San Mateo " —— it was
obvious for everyone to
see that : the 2ND San
mateo Police Officer who
pulled me over in
Hillsdale was referring

Pg 4

to the 1st San Mateo
Police officer who first
pulled me over in
San Mateo.

The 2ND San Mateo Police
officer who pulled me over
1 (one) block of 37th avenue
(south) at about 3:40 AM.
or shortly after and I could
tell by looking at his
face that he "was pissed
off about something"
— and he was" saying
stuff that did not make
sense to me"

ONE Does not have
to be an Einstein or Isaac
Newton to Know that
the 1st San Mateo
police officer who

Pg 5

pulled me over in San Mateo (at about 3:10 Am) or shortly after [ CALLED the 2ND San Mateo Police officer to look out for me on EL CAMINO Real and to pull me over again ( for the 2ND time) — and it was about 3:40 or shortly after ——> I DID NOT EVEN VIOLATE ANY TRAFFIC CODES of the STATE OF CALIFORNIA

——> AND this is HARRASMENT No matter

Pg 6

What anybody could
say. The distance between
San Mateo and Hillsdale is
in MILES — I do not know
exactly how many miles.

I fear for my life
now — with police officers
carrying guns — no
one knows. We have
heard about them killing
innocent people and
came up with LIES left
and right until the
Truth showed up
later.

A case in mind
— is the young man
that two San Francisco
Police Officers killed

pg 7

and the S.F. Police chief
and top S.F. Cops went on
T.V. and said the the
" two Policers (1 man and
1 woman) were justified
in Killing the young man
(22 or 23 years old) — because
" the young man was "firing"
at the officers first. a
few days later " the
same S.F. officers "
changed their story
after it was determined
that the young man
did not have a gun

⟹ the young man's
mother and an Oakland
attorney filed a $10 $\frac{00}{xx}$
million dollars wrongfull
death lawsuit.

Pg 8

I called my sister, a professor at the College of San Mateo — her name is Dr Caroline Naufahu and she called and left a message at the San Mateo Police chief's office.

\* my sister's phone # is (650) 344-8893

\* We have to take this case to court : ① Not only San Mateo police officers <u>lying</u> on CITATIONS → but now they started <u>HARRASSING</u> <u>me</u>.

Thanks,
Aisake P. Naufahu
MR. Aisake (Isaac) Naufahu

Pg. 9

Both San Mateo Police
Officers nivolved ni
pulling me over
ni San Mateo and
Hillsdale ni the
Morning of July 12th
2007 were white.

EXHIBIT 7



Invites your application for:

# Police Officer

Entry Level



New San Mateo Police Facility to open in the near future

## *Continuous Filing*

# The City

San Mateo is a city of 95,000 residents, located midway between San Francisco and the Silicon Valley. One of the City's strengths is its diversity, both in the ethnic makeup and physical development of the community. San Mateo has distinct residential neighborhoods and a strong business component, which includes significant retail and office uses, light manufacturing, commercial, recreation, and a healthy 17 square block downtown. It is also a regional center with two premier shopping centers, a City owned golf course, and a full range of medical services including two hospitals.

San Mateo is a full service city with a total budget of $130 million and over 550 fulltime employees. Find out more interesting facts at: **www.cityofsanmateo.org**

# The Department

The San Mateo Police Department has 113 sworn and 40 civilian positions. 24/7 operation.

### PHILOSOPHY OF THE CHIEF OF POLICE

The San Mateo Police Department is dedicated to providing the highest level of police services to all persons within our community. Fairness, equality, justice and honor are our guiding principles as we execute our duties and obligations to office. The Department also recognizes its responsibility to improve the quality of life for those who live and work within our community by forming cooperative relationships with other City departments and service providers outside the organization.



# The Position

Police Officers perform law enforcement and crime prevention work; control traffic flow and enforce state and local regulations; perform investigative work; participate in and provide support and assistance to special department crime prevention and enforcement programs and do related police work as assigned. Duties and hours will vary with assignments.

*"The Police Department is dedicated to providing the highest level of police service …"*

# The Duties

- To patrol in a radio-equipped car or on foot; answer calls for the protection of life and property;
- Enforce City, County and State laws;
- May conduct both preliminary and follow-up investigations of disturbances, prowlers, burglaries, thefts, robberies, vehicle accidents, death, and other criminal activities.
- Prepare accurate written reports utilizing proper grammar;
- Understand broadcasting procedures of a police radio system;
- Testify and present evidence in court;
- Understand and carry out oral and written direction;
- Possess the ability to accurately see and remember faces, numbers, incidents, and places, make arrests as necessary, interview victims, complainants and witnesses;
- Question suspects; Gather and preserve evidence;
- Prepare reports of arrests made, activities performed, and unusual incidents observed;

- Learn, understand, and interpret laws and regulations;
- Search, fingerprint and transport prisoners.
- Promote the safe flow of traffic through enforcement, direction and other actions;
- Administer first aid as necessary;
- Contact and cooperate with other law enforcement agencies in matters relating to the apprehension of offenders and the investigation of offenses;
- Think and act quickly in emergencies, and evaluate situations and people accurately.
- Check buildings for physical security; perform undercover and surveillance activities; serve warrants and subpoenas. Be proficient in the proper use of firearms and other defensive implements as required.
- Establish and maintain contact and positive relationships with citizens regarding potential law enforcement issues, including informants and contacts with people who may be helpful in criminal investigations; perform other duties necessary to improve the quality of life for the citizens of San Mateo.