1   David M. King, Esq. (Bar No. 95279)
    Jeremy A. Burns, Esq. (Bar No. 239917)
2   CARR, McCLELLAN, INGERSOLL, THOMPSON & HORN
    Professional Law Corporation
3   216 Park Road
    P.O. Box 513
4   Burlingame, California  94011-0513
    Telephone:     (650) 342-9600
5   Facsimile:     (650) 342-7685

6   Attorneys for Defendant City of San Mateo

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  AISAKE (ISACC) P. NAUFAHU, an          No. C 07-04517 MMC
    individual Pro Se Litigant,
12                                         CITY OF SAN MATEO'S MOTION FOR
                  Plaintiff,               SUMMARY JUDGMENT
13
                                           Action Filed:  July 31, 2007
14                vs.

15  CITY OF SAN MATEO, a City              Date:
    Incorporated, SAN MATEO CHIEF OF       Time:
16  POLICE S.E. MANHEIMER, SAN             Dept.:
    MATEO POLICE CAPTAIN M.                Judge:    Honorable Maxine Chesney
17  CALLAGY, SAN MATEO POLICE
    LIEUTENANT A. J. PARISIAN, SAN
18  MATEO POLICE AMENDING OFFICER
    JACK RATCLIFFE, S26, SAN MATEO
19  POLICE OFFICER BOLOGNA BADGE
    NUMBER 95, 4 UNNAMED SAN
20  MATEO POLICE OFFICERS,

21                Defendants.

22

23

24

25

26

27

28

1

Table of Contents

2

Page

3   I.    NOTICE OF MOTION AND MOTION .......................................................... 1

4   II.   INTRODUCTION ...................................................................................... 1
    III.  STATEMENT OF FACTS .......................................................................... 2

5         A.   The 2000 Alleged Theft Incident .................................................. 2

6         B.   The February 20, 2006 Traffic Stop and Citation Incident. ...................... 2

7         C.   The July 12, 2007 Terry v. Ohio Traffic Stops ...................................... 7

    IV.   PROCEDURAL BACKGROUND ............................................................... 9

8   V.    ARGUMENT ............................................................................................ 9

9         A.   Legal Standard ............................................................................ 9

10        B.   As a Matter of Law, Naufahu's State Causes of Action are Barred ............ 10

                 1.   Naufahu Failed to Comply with the California Torts Claim Act............. 10

11        C.   Plaintiff's Claims Concerning the 2000 Incident Are Time-Barred by the
12             California's Personal Injury Statute of Limitations. .............................. 13

13        D.   San Mateo is Entitled to Summary Judgment on the Federal Causes of
               Action Based on the February 20, 2006 Incident.................................. 13

14               1.   Plaintiff's Federal Claims Concerning the February 20, 2006
                      Incident Fail .............................................................. 14

15        E.   Plaintiff's Claims Concerning the July 12th Stops Fail as a Matter of Law......... 20

16               1.   There was no Fourth Amendment Violation Concerning the
                      Routine, Brief Traffic Stops............................................... 20

17               2.   San Mateo Did Not Discriminate Against Naufahu................................. 21

18               3.   Plaintiff's Traffic Stop Claims Do Not Amount to Official Policy or
                      Practice and Therefore Fail on this Additional Ground............................ 23

19   VI.   CONCLUSION ....................................................................................... 24

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248  (1986), 106 S. Ct. 2505, 91 L. Ed.2nd 202...................................................................................................................... 9, 10

*Baker v. McCollan* 443 U.S. 137 (1979)........................................................................... 18

*Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed.2nd 265 ............................................................................................................................ 10

*Crawford – El. V. Britton*, 523 U.S. 574, 600, 140 L.Ed.2d 759, 1185 S.Ct. 1584 (1998) ........................................................................................................................ 20

*Federal Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 471 (9th Cir. Wash. 1991) ................. 19

*Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 763 ........................................................ 11

*Haughen v. Brosseau*, 339 F.3rd 857, 874 (9th Cir. 2003) ............................................................. 23

*Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 160 L.Ed. 2d 842 (2005)...................... 19

*Illinois v. Gates* 462 U.S. 213 (1983) ............................................................................................ 18

*In Re Application of Johnson* (1935) 6 Cal.App.2nd 654 ............................................................. 15

*Johnson v. Crooks* (11th Cir. 2002) 326 F.3d 995 ....................................................................... 21

*Maynard v. City of San Jose* (9th Cir. 1994) 37 F.3rd 1396, 1406 ............................................... 11

*McDade v. West*, 223 F.3rd 1135, 1141 (9th Cir. 2000) ............................................................... 23

*Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L.Ed.2nd 611 (1978)..................................................................................................................... 23

*Pesnell v. Arsenault*, 490 F.3rd 1158, 1164 ............................................................................... 13

*Petersen v. Vallejo* (1968) 259 Cal.App.2nd 757, 766.................................................................. 11

*Phillips v. Desert Hospital Distr.* (1989) 49 Cal.3rd 699, 705 ...................................................... 11

*Plumeau v. School Dist. # 40 County of Yamhill*, 130 F.3rd 432, 438 (9th Cir. 1997)................. 23

*Terry v. Ohio*, 392 U.S. 1 (1968) .................................................................................................. 14

*Tietz v. Los Angeles Unified School District* (1965) 238 Cal.App.2nd 905, 911 .......................... 11

*United States v. Armstrong*, 517 U.S. 456, 465, 134 L.Ed.2d 687, 116 S.Ct. 1480 (1996).......................................................................................................................... 20

*United States v. Chavez-Valenzuela*, 2001 U.S. App. LEXIS 28326 (9th Cir. 2001) .................. 15

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3  *United States v. Foppe*, 993 F.2d 1444 (9th Cir. 1993) ................................................ 14

4  *United States v. Holt*, 264 F.3d 1215, 1221 (10th Cir. 2001) ................................. 14, 19

5  *Whren v. United States*, 517 U.S. 806, 810, 135 L.Ed.2nd 89, 116 S. Ct. 1769
    (1996) ................................................................................................................. 15

6

7  *Williams v. Horvath* (1976) 16 Cal.3rd 834, 842 ........................................................ 11

8  **STATUTES**

9  Cal. Code Civ. Proc. § 335.1 ....................................................................................... 13

10

11  **OTHER AUTHORITIES**

  Assembly Bill 1707, Chapter 739, 10/12/2001 ........................................................... 16

12

13  California Vehicle Code § 2211(c) ............................................................................... 17

  California Vehicle Code § 22109 ................................................................................. 17

14

  California Vehicle Code § 22350 ................................................................................. 15

15

16  California Vehicle Code § 22400 ........................................................................... 16, 17

  California Vehicle Code § 22357 ................................................................................. 15

17

  California Vehicle Code § 22851 ................................................................................. 15

18

19  California Vehicle Code § 360 ..................................................................................... 17

  California Vehicle Code § 620 ..................................................................................... 17

20

  *U.S. Const. Amend. IV* ..................................................................................... 14, 15, 16

21

22  *U.S. Const. Amend. XIV* ............................................................................................ 15

23

24  **RULES**

  42 U.S.C. § 1983 ......................................................................................................... 23

25

26  Cal. Gov't Code § 911.2 ............................................................................................. 11

  Code section 911.2(a) .................................................................................................. 11

27

28  *Fed. R. Civ. P.* 56(c) .................................................................................................... 9

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3   Government Code § 911.2(a) ................................................................................ 11

4   Government Code § 911.3 .................................................................................... 12

5   Government Code § 911.4 .................................................................................... 12

6   Government Code § 911.6(c) ................................................................................ 12

7   Government Code §§ 900 *et seq* ........................................................................ 10

8   Government Code §911.6(a) ................................................................................. 12

9   Government Code § 905 ....................................................................................... 10

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**I.**

2

**NOTICE OF MOTION AND MOTION**

3

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

4

Please take notice that on _____, 2008 at 9:00 a.m., or as soon thereafter

5

as this matter may be heard in Department 15 of the above-entitled Court, located at 450 Golden

6

Gate Avenue, San Francisco, California, 94102, before the Honorable Maxine M. Chesney,

7

defendant City of San Mateo ("San Mateo") hereby will and does move for summary judgment

8

to Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 56.

9

This motion is based on this Notice of Motion, Motion, Memorandum of Points and

10

Authorities, declarations and the exhibits attached thereto, and such oral and written argument

11

and evidence as may be presented on this Motion.

12

**II.**

13

**INTRODUCTION**

14

Plaintiff Aisake Naufahu's ("Naufahu") temper has a very short fuse, which quite

15

apparently, when lit with just the slightest provocation, impairs his judgment about what

16

constitutes acceptable civil behavior.  Nauhafu, not San Mateo, is responsible for the events

17

which form the basis for his spurious civil rights action.

18

At issue are a number of separate encounters with the San Mateo Police Department,

19

each of which occurred as a result of Plaintiff's conduct, as opposed to any of the nefarious

20

motivations described to them by Naufahu.

21

The centerpiece of Plaintiff's case is a traffic stop and ensuing citation issued to Naufahu

22

on February 20, 2006.  Plaintiff contends that the stop was motivated by racial prejudice.  The

23

undisputed evidence establishes, however, that Officer John Bologna had a good faith belief that

24

the Plaintiff, whose identify Office Bologna did not know, and whose face he could not see, was

25

possibly driving under the influence of alcohol and thus commenced following Naufahu's

26

vehicle shortly before 3:00 a.m. True to form, Naufahu took exception to being followed, lost

27

his temper, and in a fit of pique, voluntarily stopped his vehicle directly in the lane of travel,

28

blocking Officer Bologna's vehicle.  Plaintiff was legally cited for his unnecessary (and un-

1  signaled) stop on the highway, as well as for failing to provide proof of insurance.

2  Also at issue are Mr. Naufahu's allegations that two extremely brief traffic stops on the

3  evening of July 12, 2007, were racially motivated, when in fact, on each occasion, the involved

4  San Mateo police officer had a good faith and legal reason for the brief stops, which resulted in

5  nothing more than a minor inconvenience to the Plaintiff for literally a few minutes. Irrespective

6  of the existence of the officers' good faith belief for the brief traffic stops, Plaintiff sustained no

7  harm.

8  Finally, Plaintiff has attempted to dredge up a stale (and false) claim arising from his

9  lawful arrest in 2000, pursuant to an outstanding warrant. This baseless claim is underscored by

10  Plaintiff's failure to previously and timely assert it, and quite apparently finds its way in this

11  action in an effort to bolster his other meritless contentions.

12  ## III.

13  ## STATEMENT OF FACTS

14  Plaintiff alleges that he was treated unlawfully by San Mateo Police on three separate

15  occasions. His allegations are without any basis in fact or law. Naufahu alleges that he was

16  robbed by the San Mateo Police in January 2000, that he was unlawfully stopped on February 20,

17  2006, and again on July 12, 2007. From these incidents he has alleged, in his words: (1) illegal

18  detention; (2) conspiracy; (3) accomplice [sic]; (4) malicious prosecution; (5) false

19  imprisonment; (6) (7) invasion of privacy; (8) (9) defamation; (10) police cover up; (11) civil

20  rights violation of due process; and (12) harassment. All told the Complaint demands $15.5

21  million in damages.

22  **A.    THE 2000 ALLEGED THEFT INCIDENT.**

23  Plaintiff claims that in 2000 (after his lawful arrest pursuant to an outstanding warrant),

24  he was robbed (of approximately $50) by an unnamed white police officer. Complaint at p. 12.

25  His claim was investigated by San Mateo and found to be meritless on its face.

26  **B.    THE FEBRUARY 20, 2006 TRAFFIC STOP AND CITATION INCIDENT.**

27  On February 20, 2006, Plaintiff states that he was driving southbound on El Camino near

28  20th Avenue at just before 3:00 a.m. Declaration of David M. King ("King Decl.), Ex. A,

1    Transcript of Deposition of Aisake Naufahu ("Naufahu Tr."), 20:13–21:7. He was driving his

2    daughter's 1983 Buick, registered in her name. *Id.* 21:10-17. Plaintiff was in the right hand lane

3    of three south-bound lanes of El Camino when he noticed a police car. *Id.* 23:14-15; 24:7-18.

4    Plaintiff estimates he was traveling at an estimated 30 - 35 mph in a 35 mph zone. *Id.* at 25:11-

5    18. There were only a few cars on the road. *Id.* at 25:5-8.

6        Officer John Bologna was driving the police car Plaintiff observed. Declaration of John

7    Bologna in Support of San Mateo's Motion for Summary Judgment, at ¶ 3 ("Bologna Decl.").

8    Based upon his training and experience, Officer Bologna decided to observe Plaintiff because it

9    appeared Plaintiff was driving slowly in the right hand lane, despite a lack of other traffic or

10   other conditions which might necessitate a slow speed, and at a time after bars close, such that

11   drunk drivers tend to be on the road. *Id.*

12        The police car Plaintiff observed was proceeding north, as Plaintiff passed 20th avenue.

13   Naufahu Tr. at 25:23-25. The police car made a U-turn at 20th avenue. *Id.* 26:13-14; Bologna

14   Decl. at ¶ 4. Plaintiff observed that the police car was behind him. *Id.* at 27:19-23. Plaintiff

15   states that the police was "very close" behind him. *Id.* at 31:16-22. Yet, Plaintiff could see the

16   front headlights, grille, and push bar of the patrol vehicle in his rearview mirror. *Id.* at 28:5-18.

17   When Plaintiff arrived at El Camino and 25th Avenue, he signaled and was pulling over. *Id.* at

18   31:23-32:8; Bologna Decl. at ¶ 4. The police car passed Plaintiff, and made a sharp right turn

19   west onto 25th Avenue. *Id.* at 33:1-33:23; Bologna Decl. at ¶ 5. Plaintiff stated that he was

20   pulling over because he was wondering why he was being followed by the police car. *Id.* at

21   34:6-9. Plaintiff proceeded southbound on El Camino. *Id.* at 36:12-16; Bologna Decl. at ¶ 5.

22   Shortly thereafter, Plaintiff observed a police car behind him again. *Id.* at 38:25-39:5.

23        When they reached 31st Avenue, Plaintiff suddenly stopped his Brown Buick in the

24   middle of the third lane of traffic, alongside the Sears parking lot at the Hillsdale Mall. Bologna

25   Decl. at ¶ 6. There is no shoulder in this area of southbound El Camino. The right curb

26   bounding south bound El Camino is painted red to signify no parking or stopping. *Id.;* Alan

27   Parisian Decl. at ¶ 6. To be clear, Officer Bologna did not put on his lights, or siren, or in any

28   way indicate to the driver that he should stop. Bologna Decl. at ¶ 6; Naufahu Tr. at 186:15-22,

1   189:4:24; Parisian Decl. at ¶ 5.  The driver stopped entirely of his own volition in the middle of a

2   traffic lane, which Officer Bologna believed was hazardous, by virtue of the driver's blocking

3   and impeding a highway lane of traffic.  Bologna Decl. at ¶ 6.  The driver of the Brown Buick

4   did not, in any way, signal for a stop.  *Id.*  He did not activate his emergency flashers, or employ

5   a hand signal to warn of his stop.  *Id.*  At this point, Officer Bologna had not seen the Brown

6   Buick's driver, had no idea what the driver looked like, and did not know whether the driver was

7   male or female.  *Id.* at ¶ 7.

8         Plaintiff *first* testified during the first day of his deposition on April 22, 2008, that the

9   police car pulled him over adjacent to the Sears parking lot at the Hillsdale Mall (Naufahu Tr. at

10   43:8-43:23) and that the police car put his red light on.  *Id.* at 44:9-44:25.  Plaintiff also stated

11   that he pulled off the road completely onto the shoulder.  *Id.* at 45:3-45:4.   However, on April

12   23, 2008, San Mateo's attorney confronted Mr. Naufahu with contradictory statements he had

13   previously given to San Mateo Lieutenant Alan Parisian when Mr. Parisian interviewed him.  *Id.*

14   at 181:21-182:17.   Naufahu conceded that he had told Lieutenant Parisian the truth.  *Id.* at

15   155:12-21.  Naufahu had previously admitted to Lieutenant Parisian that he had stopped his car

16   without having been signaled, in any way, to do so.  Declaration of Alan Parisian ("Parisian

17   Decl."), Ex. A, at 26:1122-1150.

18         After San Mateo's attorney pressed Naufahu to explain the contradiction, Plaintiff

19   ultimately recanted his testimony of April 22, 2008, that the police officer had pulled him over.

20   Naufahu Tr. at 182:18-186:22.  At first, Mr. Naufahu reiterated that the police car turned on his

21   light, causing him to pull over.  *Id.* at 184:1-4.  He finally grudgingly admitted that he had

22   changed his story as a result of having read San Mateo's Settlement Conference Statement

23   (which was, in large part, premised upon Plaintiff's admission to Lt. Parisian of stopping in the

24   lane of traffic of his own volition).   *Id.* at 184:5-8, 185:1-6.   Faced with his inconsistent

25   statements, Mr. Naufahu admitted that he stopped on his own:

26              Q:     So I want to tell you the truth now, okay?  So isn't it a fact, Mr.
                      Naufahu, that on February 20, 2006, you were angry that this

27                      officer was following you and you decided to stop on your own
                      without his turning on his red light?  Isn't that the truth?  You think

28                      about it, you're under penalty of perjury in Federal Court.  Tell the
                      truth.

1    A:    Yeah, that – that I may have done that.

2    *Id.* at 186:15-22.

3        Mr. Naufahu also grudgingly admitted that he had given false testimony on April 22,

4    2008 to having pulled his vehicle off the road onto a shoulder.  He admitted he had simply

5    stopped in the road because he was angry.  *Id.* at 186:23-25; 187:1-25; 188:1-23-18.  Mr.

6    Naufahu explained his motivation:

7        Q:    I've been there.  There's no shoulder there, it's a red painted curb.
         And no shoulder and nowhere to pull off.

8

9        A:    And you have to understand, I was kind of pissed off -- ...

10       Q:    -- so you just stopped your car in the road, right? … Truthfully,
         isn't that right?

11       A:    I know I stopped.

12       Q:    Okay.  In the road.

13       A.    Yeah.

14   *Id.* at 189: 4-24; *See also* Bologna Decl. at ¶ 6; see also Parisian Decl. Ex. A, at 26:1122-1150.

15       Further, although Plaintiff disingenuously testified initially on April 22, 2008, that when

16   he was supposedly pulled over by Officer Bologna, he actuated his right turn signal, he also

17   admitted that his driver's side window was nearly closed (making a hand signal impossible), that

18   he did not use a hand signal to warn of a stop, nor did he actuate his emergency flashers.

19   Naufahu Tr. at 48:7-25; 49:1-25; 50:1-6; 51:23-25.

20       Naufahu also admitted that he was angry and hostile towards Officer Bologna before

21   Officer Bologna approached him on foot, after Plaintiff's voluntary stop.  Naufahu Tr. at 172:22-

22   173:6.

23       After stopping, Officer Bologna walked over to Plaintiff's car and asked the driver how

24   much he had to drink.  Naufahu Tr. 57:16-58:19, 59:9-59:20.  Officer Bologna asked Naufahu

25   for his license, registration and proof of insurance.  *Id.* at 61:9-12.  Plaintiff was angry at Officer

26   Bologna and began cursing at him.  *Id.* at 61:22-62:10; Bologna Decl. at ¶ 8.  When Officer

27   Bologna requested backup, other officers heard Plaintiff swearing over the Officer Bologna's

28   police radio.  Bologna Decl. at ¶ 8.  This resulted in four other officers responding to the scene.

1    *Id.*

2       At his deposition, Naufahu explained why he was angry. In his words, "[a]s a person of

3    color, I mean to be pulled over and accused of drunk driving ..." *Id.* at 62:11-14. Naufahu

4    admitted raising his voice at Officer Bologna and swearing at him. *Id.* at 62:19-20, 63:7-63:20.

5    Officer Bologna reported that he had never been cursed at before like that in his life. Bologna

6    Decl. at ¶ 8. Part of the Naufahu tirade was captured on a personal audio recorder. Bologna

7    Decl. at ¶ 10. Plaintiff is clearly heard loudly and belligerently swearing on the recording. *Id.*

8       Mr. Naufahu claims that he was stopped for 40 minutes. From the dispatch record, it can

9    be seen that Officer Bologna first detained Mr. Naufahu at 2:48:21 a.m. and was back in service

10   at 3:11:53 a.m. Bologna Decl. at ¶ 11. The total duration from the time of the stop at to the time

11   Officer Bologna left is approximately 23 minutes. *Id.* These records match Officer Bologna's

12   recollection of the approximate amount of time Mr. Naufahu was detained. *Id.*

13      Mr. Naufahu's conduct extended his detention. *Id.* at ¶ 12. Officer Bologna had to wait

14   for backup. Bologna Decl. at ¶ 8. It was nearly impossible to give Naufahu any directions or get

15   a response to Officer Bologna's instructions, as he was screaming and cursing at Officer

16   Bologna. *Id.* Officer Bologna was forced to repeat himself and wait out Naufahu's tirades. *Id.*

17   at ¶ 12. His cursing and screaming complicated and further delayed matters as two Sergeants

18   oversaw the stop, along with other officers. *Id.*

19      Officer Bologna also believed Mr. Naufahu had violated the traffic code when he

20   stopped, blocking the third lane of traffic. Bologna Decl. at ¶ 14. He believed Naufahu's

21   stopping was hazardous. *Id.* at ¶ 6. Thus, Officer Bologna wrote a citation accordingly, along

22   with a correctible violation for failure to provide valid insurance. *Id.* at ¶¶ 13 and 16. Officer

23   Bologna later was advised that he had incorrectly cited Mr. Naufahu. *Id.* A superior officer,

24   Jack Ratcliffe, who oversees traffic enforcement, "corrected" the ticket. *Id.*

25      Officer Bologna did not stop or ticket Mr. Naufahu because of his ethnicity. *Id.* at ¶ 7,

26   15. Officer Bologna did not detain him beyond the scope of his suspicion that he was under the

27   influence, and had violated the traffic code. Bologna Decl. at ¶ 15. As soon as Officer Bologna

28   determined that Naufahu was not under the influence, he had confirmed Naufahu's license and

1  registration, and had completed the traffic citation, Officer Bologna allowed Mr. Naufahu to

2  leave. *Id.* Naufahu's tirade lengthened the delay. *Id.* at ¶ 12

3        On March 18, 2006, Plaintiff sent a letter complaining about the incident to Mayor John

4  Lee and on March 20, 2006, he lodged an administrative complaint with the San Mateo Police

5  Department. At the subsequent traffic hearing, Naufahu provided proof of insurance. The traffic

6  commissioner dismissed the remaining "corrected" vehicle code violation. Bologna Decl. at ¶

7  17.

8        On December 6, 2006, San Mateo received Plaintiff's tort claim dated December 4, 2006

9  for damages against San Mateo. Complaint, Exhibit 7. On January 8, 2007, San Mateo served

10  Plaintiff with statutory notice that the claim was untimely and would not be acted upon. The

11  notice was incorrectly dated January 8, 2006. On January 10, 2007, Plaintiff submitted a

12  purported application to San Mateo for leave to file a late claim. On February 5, 2007, San

13  Mateo served Plaintiff with a revised notice that his December 6, 2006 claim was untimely, and

14  would not be acted upon. Plaintiff was, pursuant to statute, provided with specific instructions as

15  to his legal recourse. Plaintiff did not thereafter petition the state court for relief from his failure

16  to timely file a tort claim. King Decl. at ¶ 3, Ex. B; ¶ 4, Ex. C; ¶ 5, Ex. D; ¶ 6, Ex. E. Mason

17  Decl. at ¶¶ 4, 5, 6, and 7.

18  **C.**     **THE JULY 12, 2007 *TERRY V. OHIO* TRAFFIC STOPS.**

19        Plaintiff was pulled over during the early morning hours of July 12, 2007, on his way to

20  work. Naufahu Tr. at 92:3-19. He was driving Delaware Street in San Mateo at approximately

21  3:00 am. *Id.* at 92:20-24. He was traveling at 25 miles per hour, when he was pulled over at the

22  corner of Second Avenue at Delaware Street. *Id.* at 93:3-14. The officer who pulled him over

23  said he was not driving straight. *Id.* at 93:23-94:2; *see also* Declaration of Richard Reyna

24  ("Reyna Decl.") at ¶ 2. Officer Reyna states that he observed Naufahu swerve and straddle the

25  lane line. Reyna Decl. at ¶ 2. Officer Reyna asked if Plaintiff was drunk, asked for his driver's

26  license, checked it and told him he could leave. *Id.* at 94:3-10; *see also* Reyna Decl. at ¶ 5.

27  Naufahu was stopped for four minutes. *Id.* at 97:18-19.

28  ////

1    During this brief detention, Officer Reyna detected that Mr. Naufahu was angry at being

2    stopped. Reyna Decl. at ¶ 5. Naufahu raised the tone of his voice and began to speak more

3    quickly. *Id.* He mentioned something about his nephew having been wrongfully arrested, and

4    that he was upset about that. *Id.* Officer Reyna remained calm and professional and made the

5    encounter as short as possible. *Id.* After he had determined that Mr. Naufahu was sober, and not

6    having probable cause to make an arrest, he let the driver go. *Id.* Reyna believes the entire

7    exchange lasted no more than five minutes. *Id.*

8    After Naufahu was released, he went to a gas station and then a grocery store, Safeway,

9    on El Camino. Naufahu Tr. at 100:3-10. Naufahu states he was at the grocery store for

10    approximately five minutes. *Id.* at 100:11-13.

11    After shopping, Naufahu resumed traveling southbound on El Camino, and was pulled

12    over south of 37th Avenue and El Camino. Naufahu Tr. at 100:16-23. The officer who pulled

13    Mr. Naufahu over is named Matthew Lethin. Declaration of Matthew Lethin ("Lethin Decl.") at

14    ¶¶ 1-2.

15    Officer Lethin had observed an automobile which had an equipment violation under the

16    traffic code. Lethin Decl. at ¶ 4. Officer Lethin does not, at this time, recall the nature of the

17    infraction. *Id.* Since he did not cite Naufahu, there is no record of what the violation was.

18    Lethin Decl. at ¶ 4. However, Officer Lethin can say for certain that he did not know the driver's

19    ethnicity or gender when he pulled the driver over, and only pulled him over because he believed

20    he had probable cause of a traffic violation. *Id.*

21    When Officer Lethin pulled the automobile over on 38th and South El Camino Real he

22    called in the license plate to police dispatch. Dispatch told Officer Lethin that this individual had

23    just been pulled over by Officer Reyna. *Id.* at ¶ 5.

24    When Officer Lethin learned that Officer Reyna had already pulled the driver over,

25    Officer Lethin decided that he would simply let the driver know what had caught his attention,

26    believing that Officer Reyna had previously stopped him for the same equipment violation. *Id.*

27    at ¶ 6. Officer Lethin's intent was to get the driver on his way as soon as possible. *Id.*

28    ////

1    Officer Lethin got out of the car and asked if he had just been pulled over.  Naufahu Tr.

2   at 101:13-18.  Naufahu told him that he had just been pulled over that evening.  *Id.* at 106:2-16.

3   Lethin told the individual in an apologetic and deferential voice that he understood he had just

4   been pulled over by Officer Reyna.  Lethin Decl. at ¶ 7.  According to Naufahu, Officer Lethin

5   sounded "pissed off" about something, but Naufahu did not know what he was upset about.

6   Naufahu Tr. at 102:1-5.  According to Naufahu, Officer Lethin said "something else," but

7   Naufahu has no idea what that was.  Naufahu Tr. at 103:23-25.  According to Officer Lethin, he

8   told Naufahu that he was not going to ticket him, and that he should correct the equipment

9   violation.  Lethin Decl. at ¶ 7.  Officer Lethin does not remember exactly how Naufahu

10   responded, but he sensed from his tone that he was angry.  *Id.* at ¶ 7.  Naufahu admits that the

11   stop lasted "a minute or something."  *Id.* at 104:30-7; *see also* Lethin Decl. at ¶ 8.

12                                    **IV.**

13                        **PROCEDURAL BACKGROUND**

14    On July 31, 2007, Plaintiff Aisake Naufahu filed a civil complaint ("Complaint") in San

15   Mateo Superior Court, assigned civil case number 464835.  San Mateo answered on August 29,

16   2007.  San Mateo removed the case to the Northern District of California on August 31, 2007.

17   On March 21, San Mateo filed a motion to dismiss the individual defendants.  The Court granted

18   San Mateo's motion to dismiss on May 19, 2008 and dismissed the individual defendants.  See

19   *Order Granting Individual Defendants' Motion to Dismiss* (May 14, 2008, Dkt. No. 74).

20                                    **V.**

21                              **ARGUMENT**

22   **A.    LEGAL STANDARD.**

23    Summary judgment is proper where the pleadings, discovery and affidavits show there is

24   "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

25   matter of law."  See *Fed. R. Civ. P.* 56(c).  Material facts are those that may affect the outcome

26   of the case.  See *Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248, 106 S. Ct. 2505, 91

27   L. Ed.2nd 202.  A dispute as to a material fact is genuine if the evidence is such that a reasonable

28   jury could return a verdict for the nonmoving party. See *id.*

1    A court will grant summary judgment "against a party who fails to make a showing

2    sufficient to establish the existence of an element essential to that party's case, and on which that

3    party will bear the burden of proof at trial . . . since a complete failure of proof concerning an

4    essential element of the nonmoving party's case necessarily renders all other facts immaterial."

5    See *Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed.2nd 265; see

6    also *Anderson v. Liberty Lobby*, 477 U.S. at 248.  The moving party bears the initial burden of

7    identifying those portions of the record that demonstrate the absence of a genuine issue of

8    material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and

9    by his own affidavits, or by the depositions, answers to interrogatories, or admissions on file,

10    designate specific facts showing that there is a genuine issue for trial."  See *Celotex*, 477 U.S. at

11    324 (*citing* Fed. R. Civ. P. 56(e)).

12  **B.**    **AS A MATTER OF LAW, NAUFAHU'S STATE CAUSES OF ACTION ARE BARRED.**

13    For the reasons specified below, San Mateo is entitled to summary judgment on all of the

14    state causes of action alleged by Naufahu.

15        **1.    Naufahu Failed to Comply with the California Torts Claim Act.**

16    San Mateo is entitled to summary judgment on Naufahu's state law claims because

17    Naufahu has not complied with California's Torts Claim Act concerning <u>any</u> of the alleged

18    incidents.  Plaintiff only belatedly attempted to comply with the Torts Claim Act concerning his

19    February 20, 2006 incident; he presented an untimely claim on December 7, 2006.  He did not

20    obtain leave from San Mateo to file a late claim, nor did he petition the state court for relief from

21    his failure to timely file a tort claim.

22    As a jurisdictional prerequisite to proceeding with state law claims against a public entity

23    in California, Plaintiff is required to comply with the claims requirements of Government Code

24    §§ 900 *et seq.*  Government Code section 905 specifically provides, in pertinent part:

25            There shall be presented in accordance with Chapter 1 (commencing with
            section 900) and Chapter 2 (commencing with section 910) of this part all
26            claims for money or damages against local public entities....

27    ////

28

1  Government Code section 911.2(a) provides:

2      A claim relating to a cause of action for death or for injury to person or to
    personal property or growing crops shall be presented as provided in
3      Article 2 (commencing with Section 915) **not later than six months** after
    the accrual of the cause of action. A claim relating to any other cause of
4      action shall be presented as provided in Article 2 (commencing with
    Section 915) not later than one year after the accrual of the cause of
5      action. (Emphasis added.)

6  Cal. Gov't Code § 911.2; *Maynard v. City of San Jose* (9th Cir. 1994) 37 F.3rd 1396, 1406

7  ("Pursuant to the California Tort Claims Act, a plaintiff suing a city and its employees must

8  present a claim to the city no more than six months after accrual of the cause of action.). While

9  California's Torts Claim Act does not bar federal causes of action, it applies to causes of action

10 based on California law. *Williams v. Horvath* (1976) 16 Cal.3rd 834, 842.

11     It is a statutory mandatory requirement that the claimant present a claim within the

12 specified time period after accrual of a cause of action. *Phillips v. Desert Hospital Distr.* (1989)

13 49 Cal.3rd 699, 705.  The timely filing of a claim is an essential element of a cause of action

14 against a public entity, and failure to allege compliance renders the complaint subject to

15 dismissal. Indeed, the California Supreme Court has held that:

16     "The filing of a claim for damages 'is more than a procedural requirement,
    it is a condition precedent to plaintiffs maintaining an action against
17     defendants, in short, an integral part of plaintiff's cause of action.'"

18 *Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 763, quoting *Williams v. Horvath* (1976)

19 16 Cal.3rd 834, 842.  Failure to file a claim against a governmental entity for monetary damages

20 within the meaning of the California Tort Claims Act is fatal to the purported cause of action.

21 *Tietz v. Los Angeles Unified School District* (1965) 238 Cal.App.2nd 905, 911.  The mere fact

22 that a governmental entity has some notice or knowledge of an accident and possible claim will

23 not excuse failure of the claimant to file a timely claim as required by the statute. *Petersen v.*

24 *Vallejo* (1968) 259 Cal.App.2nd 757, 766.

25     Naufahu's tort claim of December 4, 2007 concerning the February 20, 2006 incident

26 was submitted 287 days (more than nine months), after the incident.  King Decl., Ex. B,

27 Plaintiff's claim of December 4, 2006.  Mason Decl. at ¶ 4.  Because the claim was untimely,

28 under Government Code § 911.2(a), on January 8, 2007, written notice of the untimeliness of the

1    claim was served by the San Mateo city attorney, Shawn Mason, on the Plaintiff, which notice

2    provided reference to the statutory options available to Plaintiff to pursue a late claim, pursuant

3    to Government Code § 911.3.  The notice itself was, however, erroneously dated January 8,

4    2006.  King Decl., Ex. C (Notice of Late Claim, dated January 8, 2006, together with proof of

5    service by mail of said notice of late claim on January 8, 2007); Mason Decl. at ¶ 5.

6        On January 10, 2007, Plaintiff submitted a letter to San Mateo, which purported to be an

7    application to present a late claim pursuant to Government Code § 911.4.  (In that letter, Plaintiff

8    pointed out that the notice of late claim was misdated January 8, 2006, but nonetheless received

9    on January 9, 2007.)  King Decl., Ex. D (Plaintiff's application for late claim); Mason Decl. at ¶

10   6.  Therein, Plaintiff argued that San Mateo should be estopped from asserting a defense based

11   on the late claim, essentially because San Mateo's internal investigation of Plaintiff's complaint

12   about Officer Bologna's conduct at-issue was conducted in a manner which Plaintiff predictably

13   found to be unacceptable.

14       Because of the clerical mistake in misdating the notice of late claim, a "revised" notice of

15   late claim dated February 5, 2007, was served on the Plaintiff on February 5, 2007, once again

16   complying with the requirements of Government Code § 911.3.  King Decl. at ¶ 6, Ex. E

17   (Revised Notice of Late Claim); Mason Decl. at ¶ 6.  Thereafter, Plaintiff did not take any further

18   action in conjunction with his application for leave to present a late claim.  King Decl. at ¶¶ 7

19   and 8.  Mason Decl. at ¶ 7.

20       While Plaintiff's application for leave to file a late claim was timely, and irrespective of

21   whether Plaintiff set forth sufficient justification for San Mateo to grant leave to file a late claim,

22   the application for a late claim was not acted upon.  Rather, Plaintiff was served with the revised

23   notice of the untimeliness of the claim.  The application was not granted.  King Decl. at ¶ 7;

24   Mason Decl. at ¶ 7.

25       Government Code §911.6(a) provides that the board shall either grant or deny the

26   application within 45 days after its presentation.  Pursuant to Government Code § 911.6(c),

27   where the governmental entity fails or refuses to act on an application to present a late claim

28   within the time prescribed by the section, the application shall be deemed denied on the 45th day,

1   unless extended pursuant to agreement. There was no such agreement. King Decl. at ¶ 7; Mason

2   Decl. at ¶ 7. Thus, Plaintiff's application for leave to file a late claim was denied by San Mateo,

3   either by the reassertion of the untimeliness of the December 4, 2006 claim in the February 5,

4   2007 notice, or by failure to otherwise act upon the application within 45 days.

5           At that point in time, Plaintiff's only and final recourse for relief for his failure to timely

6   file a tort claim concerning the February 20, 2006 incident, was to file a petition with the

7   superior court in San Mateo County for relief pursuant to Government § 946.6. Plaintiff failed to

8   do so. King Decl. at ¶ 8; Mason Decl. at ¶ 7. Accordingly, all of Plaintiff's State causes of

9   action premised upon the February 20, 2006 incident are barred as a matter of law.

10          Finally, Naufahu did not file a claim at all, at any time as to the first incident in 2000, or

11  third incidents of July 12, 2007, barring any state causes of action based on these incidents. King

12  Decl. at ¶ 7; Mason Decl. at ¶¶ 8 and 9. The Torts Claim Act period ran long ago for the incident

13  which occurred in 2000. More than a year has passed since the July 12, 2007, without Plaintiff

14  filing a Tort Claim.

15          In sum, all of Naufahu's state causes of action are barred.

16  **C.    PLAINTIFF'S CLAIMS CONCERNING THE 2000 INCIDENT ARE TIME-BARRED BY THE**

17          **CALIFORNIA'S PERSONAL INJURY STATUTE OF LIMITATIONS.**

18          San Mateo is entitled to summary judgment with regard to all causes of action concerning

19  the first incident (which transpired in 2000), because Naufahu is barred by the statute of

20  limitations and has established no explanation for his delay.

21          Federal courts apply the state personal injury statute of limitations for § 1983 actions.

22  *Pesnell v. Arsenault*, 490 F.3rd 1158, 1164. In California, the current statute of limitations for

23  personal injuries is two years. Cal. Code Civ. Proc. § 335.1. Any federal or state causes of

24  action arising out of the 2000 incident are time-barred under California's statute of limitations.

25  **D.    SAN MATEO IS ENTITLED TO SUMMARY JUDGMENT ON THE FEDERAL CAUSES OF**

26          **ACTION BASED ON THE FEBRUARY 20, 2006 INCIDENT.**

27          Naufahu has alleged both state and federal causes of action based on the February 20,

28  2006 incident. Naufahu's federal law claims fail because they are without merit based on the

1    undisputed facts.

2    **1.    Plaintiff's Federal Claims Concerning the February 20, 2006 Incident Fail.**

3    There are no facts which support Plaintiff's claim of racial discrimination on February

4    20, 2006.  Plaintiff, of his own volition, stopped his car in the middle of the traffic lane.  The

5    citation he received was lawful.  Under either the Fourth or the Fourteenth Amendments,

6    Naufahu's claims fail.

7    **a.    Naufahu's Fourth Amendment Claims Fail Because Officer Bologna's
8    Detention of Naufahu Was Justified.**

9    There is no factual dispute that Naufahu's detention was justified under the Fourth

10    Amendment.  After Naufahu attempted to evade him, Officer Bologna has a reasonable suspicion

11    that Naufahu was driving under the influence.  He also reasonably, and in good faith, believed

12    that when Naufahu stopped in the middle of the road, Naufahu had committed a traffic violation.

13    The Fourth Amendment protects individuals from unreasonable searches and seizures.

14    *See U.S. Const. Amend. IV*.  "A traffic stop is a 'seizure' within the meaning of the Fourth

15    Amendment, even though the purpose of the stop is limited and the resulting detention quite

16    brief.  *Delaware v. Prouse*, 440 U.S. 648, 653, 59 L.Ed.2nd 660, 99 S.Ct. 1391 (1979).  Because a

17    routine traffic stop is more analogous to an investigative detention than a custodial arrest, courts

18    routinely analyze such stops under the framework announced in *Terry v. Ohio*, 392 U.S. 1

19    (1968).  Under *Terry*, courts determine the reasonableness of a search or seizure by conducting a

20    "dual inquiry, asking first 'whether the officer's action was justified at its inception,' and second

21    whether it was reasonably related in scope to the circumstances which justified the interference

22    in the first place."  See *United States v. Holt*, 264 F.3rd 1215, 1228 (10th Cir. 2001).  Detentions

23    or searches that are prolonged or otherwise unreasonable in view of the reason for the stop also

24    are unlawful under the Fourth Amendment.  *See*, e.g., *United States v. Foppe*, 993 F.2d 1444 (9th

25    Cir. 1993).

26    ////

27

28

San Mateo's Motion for Summary Judgment

1

2

        **(i)**     *Officer Bologna's Detention of Naufahu Was Reasonable at its Inception.*

3        Officer Bologna had a reasonable suspicion. The decision to make a traffic stop is

4  reasonable "where the police have probable cause to believe that a traffic violation has

5  occurred." *Whren v. United States*, 517 U.S. 806, 810, 135 L.Ed.2nd 89, 116 S. Ct. 1769 (1996).

6  In determining whether a stop was proper, a court looks to the events preceding the stop, then

7  examines "whether these historical facts, viewed from the standpoint of an objectively

8  reasonable police officer, amount to reasonable suspicion or to probable cause." *United States v.*

9  *Chavez-Valenzuela*, 2001 U.S. App. LEXIS 28326 (9th Cir. 2001).

10      Officer Bologna was suspicious that Plaintiff was driving under the influence based on

11  his observations of Plaintiff's driving including: (1) the slow speed at which Officer Bologna

12  believed Plaintiff was traveling; (2) Plaintiff's "evasive" maneuver; and (3) Plaintiff's sudden,

13  un-signaled stop in the middle of the road. Bologna Decl. at ¶¶ 3, 5, 6. Though Naufahu

14  disputes that he was driving slowly, claiming to be traveling 30 to 35 miles per hour, in a 35

15  miles per hour zone, he does not dispute that he pulled over at 25th Avenue or that he stopped in

16  the middle of the road. Naufahu Tr. at 34:6-9, 186:15-22.

17      Office Bologna's perception that Plaintiff appeared to be driving slowly was objectively

18  reasonable. Speed limits posted on public roads reflect a prima facie safe speed. California

19  Vehicle Code § 22357. In fact, if an individual is cited for driving at a speed in excess of a

20  posted speed limit, that individual may contest the citation and attempt to rebut the presumption

21  raised by the posted speed limit, based on the prevailing road and traffic conditions, in

22  accordance with Vehicle Code section 22350, which codifies the "basic speed law" in California.

23  California Vehicle Code § 22851; See also *In Re Application of Johnson* (1935) 6 Cal.App.2nd

24  654.

25      Vehicle Code section 22350 provides in pertinent part:

26            No person shall drive a vehicle upon a highway at a speed greater than is
             reasonable or prudent having due regard for weather, visibility, the traffic

27            on, and the surface and width of, the highway, and in no event at speed
             which endangers the safety of persons or property.

28

1    Plaintiff, by his own admission, established that there was little, if any other traffic on El

2    Camino, in the early morning hour on February 20, 2006. Naufahu Tr. at 20:13-21:7; 25:5-8. He

3    was traveling southbound in one of three southbound lanes, on a divided highway. *Id.* at 23:14-

4    15; 24:7-18. The road and traffic conditions were favorable. Bologna Decl. at ¶ 3. In such

5    circumstances, it is common knowledge that the average driver would be traveling at a speed of

6    *at least* 35 mph, and far more likely would be traveling at a speed between 40 and 45 mph.

7        Given Plaintiff's admitted speed below the posted limit, and given the uncontroverted

8    prevailing favorable road and traffic conditions, it was objectively reasonable for Office Bologna

9    to form a suspicion that Plaintiff's apparent slow speed was indicative of intoxication, given his

10    training and experience. Bologna Decl. at ¶¶ 2 and 3.

11        Moreover, Plaintiff's slow speed, as perceived by Officer Bologna, did not result in a

12    traffic stop. Rather, it only caused Officer Bologna to follow Plaintiff. *Id.* at ¶ 3.

13        It was Plaintiff's admitted subsequent conduct in first attempting to evade Officer

14    Bologna's continued tailing by pulling over, and then Plaintiff's sudden un-signaled stop in the

15    lane of traffic, which directly led to Officer Bologna's subsequent detention of Plaintiff to

16    question him about alcohol consumption and possible intoxication. *Id.* at ¶ 6.

17            ***(ii)    Officer Bologna's Decision to Cite Plaintiff Was Reasonable.***

18        Officer Bologna also reasonably believed Naufahu had violated the traffic code. *Id.* at ¶

19    6. He cited Mr. Naufahu under Section 22400 of the Vehicle Code. Bologna Decl. ¶ 16.

20    Section 22400 provides:

21            (a)    No person shall drive upon a highway at such a slow speed as to
             impede or block the normal and reasonable movement of traffic unless the
22           reduced speed is necessary for safe operation, because of a grade, or in
             compliance with law.
23
             No person shall bring a vehicle to a complete stop upon a highway so as to
24           impede or block the normal and reasonable movement of traffic unless the
             stop is necessary for safe operation or in compliance with law.
25

26    Cal. Veh. Code § 22400. Mr. Naufahu has admitted that he stopped his automobile in traffic on

27    El Camino Real, a state highway. See Assembly Bill 1707, Chapter 739, 10/12/2001. The

28    portion of El Camino Real which runs through San Mateo is also known as State Route 82.

1    California Vehicle Code § 360 defines "highway" as:

2        "'Highway' is a way or place of whatever nature, publicly maintained and
         open to the use of the public for purposes of vehicular travel. Highway
3        includes a street."

4    California Vehicle Code § 620 defines "traffic" as:

5        "The term 'traffic' includes pedestrians, ridden animals, *vehicles*, street
         cars, and other conveyances, either *singly* or together, while using any
6        highway for purposes of travel." (Emphasis added.)

7        By Naufahu's own admission, he violated Section 22400. The voluntary stop of his

8    vehicle (simply due to being angry), most certainly was not necessary for the safe operation of

9    his vehicle, or otherwise in compliance with the law. He stopped in the lane of travel on the

10   highway and blocked Officer Bologna's vehicle, as well as any other vehicular traffic which may

11   have approached from the rear. Plaintiff undoubtedly will attempt to make much of the fact that

12   given the early hour of the morning, he was not impeding "traffic." In fact, however, while he

13   has contended there was no "traffic" at the time, he conceded at deposition that traffic was light,

14   there were a few cars on the road. Naufahu Tr. at 25:5-8. Perhaps more importantly, it can not

15   be disputed that another vehicle could have approached from the rear, at any time, after turning

16   onto El Camino from a side street, or after simply catching up to the Plaintiff's stopped vehicle

17   in the road on El Camino.

18       Although a supervisory officer "corrected" the citation to a violation of Vehicle Code §

19   22109 for stopping without signaling, in fact, the original citation was justified and lawful under

20   the above cited traffic codes. Further, the "corrected" citation was also reasonable and lawful.

21   Vehicle Code § 22109 provides:

22       "No person shall stop or suddenly decrease the speed of a vehicle on a
         highway without first giving a signal in the manner provided in this
23       chapter to the driver of any vehicle immediately to the rear when there is
         opportunity to give the signal."
24

25       Vehicle Code § 2211(c) requires that a stop on a highway be signaled by a hand and arm

26   extended downward from the driver's side (left side). Plaintiff did not signal. He just stopped.

27   Plaintiff admitted that his driver's side window was open only an inch or so at the time, such that

28   he could not have extended his arm, and indeed, he admitted that he did not use a hand signal.

1   Naufahu Tr. at 48:7-25; 49:1-25.

2          The above uncontroverted facts and statutory authorities would lead an objectively

3   reasonable police officer to believe that he had sufficient justification to detain Naufahu in order

4   to ascertain if he was driving under the influence, and to cite Plaintiff for apparent violations of

5   the vehicle code.  The mere fact that the citation was dismissed by the traffic commissioner is of

6   course not at all determinative as to whether Plaintiff's civil rights were violated.  In *Baker v.*

7   *McCollan* 443 U.S. 137 (1979), for example, the U.S. Supreme Court held that a sheriff

8   demonstrated probable cause where the detainee was mistakenly pulled over, arrested, and held

9   for three days based on information regarding the detainee's brother, who had obtained a

10  duplicate of his driver's license and substituted his own picture.  In so ruling, the Court opined

11  that "[t]he Constitution does not guarantee that only the guilty will be arrested.  If it did, Section

12  1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect

13  released."  *Id.* at 145.

14         Likewise, in *Illinois v. Gates* 462 U.S. 213 (1983), the U.S. Supreme Court upheld a

15  finding of probable cause to issue a search warrant based on information accusing defendants of

16  violating state drug laws, even though the defendants challenged the veracity of the incriminating

17  information's source, a confidential informant:  "In making a determination of probable cause

18  the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of

19  suspicion that attaches to particular types of noncriminal acts."  *Id.* at 243 n. 13.  Here, we are

20  left to speculate as to why the traffic commissioner dismissed the citation.  But there is no

21  evidence that Plaintiff was found to be "innocent," and certainly no evidence to suggest that his

22  behavior was not suspicious.

23                    **b.    *The Scope of the Detention Was Reasonable In Light of the***
24                              ***Circumstances.***

25         Nor did Officer Bologna's detention of Naufahu ever exceed the initial scope of the stop

26  without cause.  "Once the motorist has produced a valid license and proof that he is entitled to

27  operate the car, he must be allowed to proceed on his way, without being subject to further delay

28  by police for additional questioning.  Further delay is justified only if the officer has reasonable

1    suspicion of illegal activity or if the encounter has become consensual." *United States v. Holt*,

2    264 F.3d 1215, 1221 (10th Cir. 2001).  A seizure that is justified solely by the interest in issuing

3    a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably

4    required to complete that omission." *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 160

5    L.Ed. 2d 842 (2005).

6        When Officer Bologna approached Naufahu's car, after he had stopped in a lane of

7    traffic, he believed Naufahu had violated a traffic law and suspected that Naufahu was

8    intoxicated.  Bologna Decl. at ¶ 9.  Naufahu's uncivil conduct extended his detention.  Naufahu

9    Tr. at 61:22-62:10; Bologna Decl. at ¶¶ 8, 10-12.  Officer Bologna did not extend the detention

10   beyond what was necessary to complete his initial reasons for the stop.  Officer Bologna did not

11   stop Naufahu because he is Tongan.  Naufahu voluntarily stopped because he was angry, and

12   prolonged his detention by his hostile verbal tirade.  Thus, Naufahu's detention was justified.

13           c.    *Naufahu's Equal Protection Claims Fail.*

14       Naufahu has also alleged intentional discrimination on behalf of San Mateo.  However,

15   because Naufahu has not produced sufficient evidence to establish an issue of fact concerning

16   San Mateo's motivations.

17       The plaintiff in a § 1983 claim alleging a violation of equal protection must prove that the

18   defendant acted in a discriminatory manner and that the discrimination was intentional.  *Federal*

19   *Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 471 (9th Cir. Wash. 1991).  Discriminatory

20   intent may be proved by direct or indirect evidence. *Id.*  In order to survive a motion for

21   summary judgment by the defendant, a plaintiff must produce evidence sufficient to establish a

22   genuine issue of fact as to the defendant's motivations.

23       Naufahu has provided no evidence sufficient to establish a genuine issue of fact as to San

24   Mateo's motivations.  San Mateo's employee, Officer Bologna, did not initiate the encounter

25   with Naufahu, who has admitted that he initiated his encounter with San Mateo, based on his

26   anger at being followed.  Naufahu Tr. at 184:5-8.  Plaintiff admits that he could not see Officer

27   Bologna's face when Officer Bologna was following him and saw him for the first time when

28   Bologna approached his car. *Id.* at 55:12-25; 59:1-25; 60:1-21.  Officer Bologna has stated that

1    he did not see Naufahu's face until he stopped. Bologna Decl. at ¶ 7. Plaintiff conceded he has

2    no contrary evidence. Naufahu Tr. at 60:5-61:1

3           Nor can Naufahu provide any evidence that his 22 minute detention or Officer Bologna's

4    decision to cite him was based on intentional discrimination based on racial animus. Officer

5    Bologna believed Naufahu had violated the traffic code. Bologna Decl. at ¶¶ 6, 14. Naufahu's

6    cursing and screaming, based on his perception of being singled-out by Officer Bologna,

7    extended his detention. Naufahu Tr. at 62:11-14; Bologna Decl. at ¶ 12. Nothing in the record

8    before the Court indicates that any of the responding officers acted with racial animus.

9           Plaintiff has not offered any evidence, nor is there any, to prove that Officer Bologna

10    exercised his discretion to enforce the traffic laws due to Plaintiff's race. There is no evidence at

11    all of the required discriminatory effect and purpose for the stop, or the citation, to support

12    Plaintiff's claim that his constitutional rights under the Equal Protection clause were denied.

13    Therefore, Plaintiff's claim should be dismissed. *United States v. Armstrong,* 517 U.S. 456, 465,

14    134 L.Ed.2d 687, 116 S.Ct. 1480 (1996). Nor has plaintiff provided any evidence that Officer

15    Bologna (or any City police officer) treated other drivers, engaged in similar conduct, differently

16    to prove the requisite discriminatory effect and purpose. *Crawford – El. V. Britton,* 523 U.S.

17    574, 600, 140 L.Ed.2d 759, 1185 S.Ct. 1584 (1998).

18    **E.    PLAINTIFF'S CLAIMS CONCERNING THE JULY 12ᵀᴴ STOPS FAIL AS A MATTER OF LAW.**

19           There is no triable issue of fact concerning the routine traffic stop. Both officers have

20    provided objectively reasonable explanations for why they very briefly detained Naufahu.

21          **1.    There was no Fourth Amendment Violation Concerning the Routine, Brief**

22                   **Traffic Stops.**

23           Neither of Naufahu's brief detentions on July 12, 2007 were unlawful. Officer Reyna

24    detained Naufahu because he suspected Naufahu was driving under the influence, after he

25    observed Naufahu's vehicle swerve into the lane line. Reyna Decl. at ¶ 2. His detention of

26    Naufahu lasted only so long as it took for the officer to enquire about Naufahu's sobriety – an

27    exercise which lasted, admittedly by Naufahu, for all of four minutes. Naufahu Tr. at 97:18-19.

28    ////

1    Naufahu was then later detained by Officer Lethin. Officer Lethin stopped Naufahu

2    because he believed Naufahu had an equipment traffic violation, such as an improperly displayed

3    license plate or a faulty brake light. Lethin Decl. at ¶¶ 4, 7. By Plaintiff's own admission,

4    Officer Lethin only detained him for "a minute or something" to inform him about the violation.

5    *Id.* at 104:3-7; Lethin Decl. at ¶ 8. Both detentions were lawful, because they were supported by

6    probable cause, based on an objective review.

7    Further, neither detention was a sufficient intrusion upon Plaintiff's rights to support a

8    Fourth Amendment claim under section 1983. The court's holding in *Johnson v. Crooks* (11th

9    Cir. 2002) 326 F.3d 995, granting summary judgment to the defendant deputy sheriff on a Fourth

10   Amendment claim arising from a very similar fact pattern, is worth citing at length on this point:

> Even routine traffic violations may require some investigation into the
> motorist's conduct or condition, followed by the exercise of judgment in
> deciding how to enforce the traffic laws in that situation. For example, an
> officer who initially stops a car for running a red light may then accept the
> motorist's explanation that the light was yellow when she entered the
> intersection and let the driver depart with an oral or written warning. At
> that point, the investigatory stop is complete. *See United States v. White, 81
> F.3d 775, 777-78 (8th Cir.), cert. denied, 519 U.S. 1011, 136 L. Ed. 2d
> 406, 117 S. Ct. 518 (1996).* The motorist has suffered a delay, perhaps an
> irritating or even harmful delay, but "a routine traffic stop is an ordinary
> incident of driving." *Ford v. Wilson, 90 F.3d 245, 248 (7th Cir. 1996),
> cert. denied, 520 U.S. 1105, 137 L. Ed. 2d 311, 117 S. Ct. 1110 (1997).* **If
> the motorist then brings a § 1983 damage action, does her *Fourth
> Amendment* claim survive summary judgment and require a jury trial
> simply because she avers she did not run the red light? We think not.**
> When an officer stops a motorist for a perceived traffic violation, briefly
> questions the motorist about what occurred, and lets the motorist depart
> without issuing a citation or expanding the investigation beyond the
> question of a traffic violation, the officer has not unreasonably intruded
> upon the privacy and liberty interests protected by the *Fourth Amendment.*
> As the Supreme Court stated in holding police officers not liable under §
> 1983 for negligently arresting the wrong individual, "The Constitution does
> not guarantee that only the guilty will be arrested. If it did, § 1983 would
> provide a cause of action for every defendant acquitted – indeed, for every
> suspect released." *Baker v. McCollan, 443 U.S. 137, 145, 61 L. Ed. 2d
> 433, 99 S. Ct. 2689 (1979).*

25   *Id.* at 998-999 (Emphasis added).

26   **2.    San Mateo Did Not Discriminate Against Naufahu.**

27   As explained above, in order to survive a motion for summary judgment by the

28   defendant, a plaintiff must produce evidence sufficient to establish a genuine issue of fact as to

1    the defendant's motivations.   Naufahu cannot create a genuine issue of fact as the officer's

2    intentions.

3        Officers Lethin and Reyna have provided sworn declarations that they stopped Naufahu

4    for legitimate reasons.  Both have stated that they did not stop Naufahu because of his race or

5    ethnicity.  Reyna Decl. at ¶ 4; Lethin Decl. at ¶ 4.  Both stopped Naufahu for legitimate reasons.

6    Officer Reyna observed Naufahu swerve into a lane line.   Reyna Decl. at ¶ 2.   Naufahu

7    acknowledges that Reyna told him this. Naufahu Tr. at 93:23-94:2; see.  Lethin stopped Naufahu

8    for a correctible issue with his vehicle, and let him go within a minute or so.

9        To prove a claim of unlawful discrimination under the *Equal Protection Clause*, Plaintiff

10   must prove that the detaining officers:

11               [E]xercised their discretion to enforce the traffic laws on account of [his]
                 race, which requires proof of both discriminatory effect and discriminatory
12               purpose. *See United States v. Armstrong, 517 U.S. 456, 465, 134 L. Ed. 2d
                 687, 116 S. Ct. 1480 (1996)*.  When the claim is selective enforcement of
13               the traffic laws or a racially-motivated arrest, the plaintiff must normally
                 prove that similarly situated individuals were not stopped or arrested in
14               order to show the requisite discriminatory effect and purpose. *See Chavez
                 v. Ill. State Police, 251 F.3d 612, 634-48 (7th Cir. 2001)*; *Gardenhire v.*
15               *Schubert, 205 F.3d 303, 319 (6th Cir. 2000)*.

16   *Johnson v. Crooks, supra*, 326 F.3d at 999-1000.

17       Here, as in *Johnson*, no facts have been alleged to show that the stops were

18   discriminatory.  And as in *Johnson*, Defendants' motion for summary judgment on the Equal

19   Protection Clause action should be granted:

20               Here, the Johnsons have offered no evidence that Crooks does not stop
                 non-African Americans under similar circumstances.  We will assume that
21               a prima facie equal protection claim may also be proved by direct evidence
                 of racial discrimination in this type of case.  But the Johnsons presented no
22               such evidence.  They rely on Ms. Johnson's personal opinion that she was
                 stopped on account of her race, plus additional aspects of the encounter that
23               do not directly evidence racial animus – that Crooks was in a position to
                 see Ms. Johnson's race when he pulled out into traffic, that Crooks closely
24               followed Ms. Johnson for eleven miles before pulling her over, and that
                 Crooks called Fort Riley the next day to bring the traffic stop to the
25               attention of either Ms. Johnson's or Mr. Johnson's commanding officer. As
                 the non-moving parties, the Johnsons must "identify affirmative evidence
26               from which a jury could find that the plaintiff has carried his or her burden
                 of proving the pertinent motive."  *Crawford-El v. Britton, 523 U.S. 574,*
27               *600, 140 L. Ed. 2d 759, 118 S. Ct. 1584 (1998)*.  They failed to do so. As
                 the Seventh Circuit stated in *Ford*, "We do not think . . . that the
28               combination of an arbitrary stop . . . with a difference in race between the
                 person stopped and the officer establishes a prima facie case of racial

1   discrimination." *90 F.3d at 248-49.* The district court erred in not
2   dismissing the equal protection claim.

3   *Id.* at 1000.

4       Naufahu was not stopped because of his race or ethnicity, and has no evidence of such a
5   motivation. Accordingly, this claim should be dismissed.

6       **3.    Plaintiff's Traffic Stop Claims Do Not Amount to Official Policy or Practice
            and Therefore Fail on this Additional Ground.**
7

8       Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where

9   official policy or custom results in a violation of a constitutional right. *Monell v. Dep't of Social*

10  *Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L.Ed.2[nd] 611 (1978). Under *Monell*, to impose

11  municipal liability under § 1983 for a violation of a constitutional right, a plaintiff must show:

12  (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the

13  municipality had a policy; (3) that such policy amounted to deliberate indifference to the

14  plaintiff's constitutional rights; and (4) that such policy was the moving force behind the

15  constitutional violation. See *Plumeau v. School Dist. # 40 County of Yamhill*, 130 F.3[rd] 432, 438

16  (9th Cir. 1997). Proof of random acts or isolated incidents of unconstitutional action by a non-

17  policymaking employee are insufficient to establish the existence of a municipal policy or

18  custom. See *McDade v. West*, 223 F.3[rd] 1135, 1141 (9th Cir. 2000). "Instead, it is when the

19  execution of a government's policy or custom, whether made by its lawmakers or by those

20  whose edicts or acts may fairly be said to represent official policy, inflicts the injuries that the

21  government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

22      Local governments, such as San Mateo, are persons subject to suit for constitutional torts

23  under § 1983. *Haughen v. Brosseau*, 339 F.3[rd] 857, 874 (9th Cir. 2003). Local governments can

24  be sued for monetary, declaratory, or injunctive relief where such suits arise out of

25  unconstitutional actions that implement or execute a policy statement, ordinance, or decision

26  officially adopted and promulgated by that body's officers. *Monell v. Dep't of Soc. Servs.*, 436

27  U.S. 658, 690-91 (1978). A local government's liability is limited such that it cannot be held

28  liable for an employee's actions outside the scope of these policies or customs. A municipality

1   may not be held solely because it employs a tortfeasor - or in other words, a municipality cannot

2   be held liable under § 1983 on a respondent superior theory.  To prevail on a § 1983 complaint

3   against a local government under *Monell*, a plaintiff must satisfy a three-part test:

4           (a)     The local government official(s) must have intentionally violated
            the plaintiff's constitutional rights;
5

6           (b)     The violation must be a part of policy or custom and may not be an
            isolated incident; and

7           (c)     A nexus must link the specific policy or custom to the plaintiff's
            injury.
8

9   See *Monell*, 436 U.S. at 690-92.

10      Plaintiff's Section 1983 claims against San Mateo fail under this three-part test because

11  Naufahu cannot show that local government officials intentionally violated Naufahu's rights.  As

12  argued above, Naufahu's constitutional rights were not violated with regard to the second and

13  third incidents.  In particular, Officer Bologna did not pull over Naufahu because he is Tongan.

14  Rather, Naufahu stopped of his own volition because he was angry.  Officer Bologna had

15  sufficient justification to detain Naufahu, and did not detain him past the scope of his initial

16  detention, which detention was lengthened by Naufahu's conduct.

17      The three stops (the one on February 20, 2006, and the two on July 12, 2007) are isolated

18  and unrelated incidents initiated by Naufahu's late night/early morning driving patterns.  The

19  mere pleading of these stops, together by Naufahu, does not create a triable issue of fact

20  concerning San Mateo's policies.

21                                          **VI.**

22                                    **CONCLUSION**

23      All of Plaintiff's state claims are barred by his failure to timely comply, or to comply at

24  all, with the California Tort Claims Act.  Further, the alleged theft of money from Plaintiff while

25  he was lawfully arrested on an outstanding warrant in 2000 is time barred.  What this court is left

26  to consider is whether there is a genuine issue as to any material fact in support of Plaintiff's

27  alleged civil rights violations based on three routine traffic stops which would entitle the Plaintiff

28  to take his case in front of a jury.  The answer is a resounding no.

1      The uncontroverted facts are that in the early morning hour of February 20, 2006, Officer

2   Bologna had no idea of Plaintiff's race, color, creed, or nationality, but simply began following

3   Plaintiff's vehicle because he had a reasonable suspicion, based on his training and the

4   circumstances that the Plaintiff may have been driving while under the influence of alcohol. The

5   uncontroverted fact is that Plaintiff then *acted* evasively by pulling over towards the curb to

6   discourage the officer from following him. The uncontroverted fact is that after Office Bologna

7   again began following the Plaintiff, his suspicion having been further aroused by Plaintiff's

8   evasive *action*, Mr. Naufahu lost his temper, and brought his vehicle to an abrupt stop, without

9   signaling, directly in the lane of traffic, in an area where there was no shoulder, and which was

10  designated for no stopping or parking at any time. Plaintiff's *actions*, and not the color of his

11  skin, were what resulted in the subsequent questioning by Officer Bologna. Plaintiff's detention

12  was then lengthened as a direct result of Plaintiff's confrontational, abusive, and vulgar

13  language, prompting back-up officers to respond. Again, it was Plaintiff's *action*, not the color

14  of his skin, which lengthened the period of detention.

15      Plaintiff was lawfully cited for conduct which, on its face, violated several provision of

16  the Vehicle Code. Plaintiff stopped his vehicle in the middle of a traffic lane. His vehicle,

17  without question, blocked a lane of traffic, blocked Officer Bologna's vehicle, and any other

18  vehicles which may have, at any time, approached from the rear. Plaintiff stopped without

19  making a hand signal to signify his intention. All of these facts are uncontroverted. There is no

20  material issue of fact as to what occurred. Nor has Plaintiff produced any evidence of

21  discrimination. Plaintiff's civil rights claims fail as a matter of law.

22      Similarly, the two police officers involved in the extremely brief and routine traffic stops

23  on July 12, 2006, have provided sworn declarations establishing that each of them had a

24  reasonable basis to have briefly stopped the Plaintiff. Plaintiff has come forward with absolutely

25  no material evidence to support that there was any improper motive involved in the stops. These

26  stops, without question, were routine in every sense of the word. Plaintiff's privacy and liberty

27  interests were most certainly not unreasonably intruded upon. These claims too fail as a matter

28  of law.

1    Finally, Plaintiff has no evidence whatsoever to support the claim that the City of San

2    Mateo has an official policy or practice of violating the Plaintiff's constitutional rights, or the

3    rights of others similarly situated.  Plaintiff's action should be dismissed in its entirety.

4    Dated:  August 15, 2008

5                    RESPECTFULLY SUBMITTED,

6                    CARR, McCLELLAN, INGERSOLL, THOMPSON & HORN
                    Professional Law Corporation
7

8                    By:
9                            David King / Jeremy A. Burns
                             Attorneys for Defendant
10                           City of San Mateo

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28